## STATE v. BARTLETT.

Where insanity is set up as a defense to an indictment, the jury must be satisfied beyond reasonable doubt, of the soundness of the prisoner's mind and his capacity to commit the crime, upon all the evidence before them, regardless of the fact whether it be adduced by the prosecutor, or by the defendant.

INDICTMENT of three counts, substantially charging that the respondent, on the 20th day of June, 1861, with force and arms, at Upper-Gilmanton, did make an assault upon one Lucien Dicey, and with a gun charged with powder and ball did shoot at and wound said Dicey, feloniously, willfully, and of his malice aforethought, intending him to kill and murder.

The defense of the prisoner, in part, was, that at the time of the supposed commission of the offense he was a monomaniac upon the subject of the infidelity of his wife, imputing an improper connection between her and the said Dicey.

Upon this part of the defense, the counsel for the prisoner requested the court to charge the jury,

1. "That if upon the whole evidence they are of the opinion that it was more probable that the prisoner was insane so as not to be responsible for his acts, than that he was sane, they ought to find him not guilty by reason of insanity.

2. That though if the jury find the prisoner committed the offense, the burden of proof is on him to remove the natural presumption of sanity, yet that the jury must be satisfied beyond a reasonable doubt that he was a sane man and responsible for his acts, or it is their duty to find him not guilty, by reason of insanity."

Among other things, the court did say to the jury: That a man is not to be excused from responsibility, if he has capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he is then doing. He must have a knowledge and consciousness that the act he is doing is wrong and criminal, and will subject him to punishment. In order to be responsible, he must have sufficient power of memory to recollect the relation in which he stands to others, and in which others stand to him; that the act he is doing is contrary to the plain dictates of justice and right, injurious to others, and a violation of the dictates of duty.

On the contrary, although the person may be laboring under partial insanity, if he still understand the nature and character of his act and its consequences, if he has a knowledge that it is wrong and criminal, and a mental power sufficient to apply that knowledge to his own case, and to know, if he does the act, he will do wrong and receive punishment, such partial insanity is not supposed to exempt him from responsibility for criminal acts. If it be proved to the satisfaction of the jury, that the mind of the accused was in a diseased and unsound state, the question will be, whether the disease existed to so high a degree that, for the time being, it overwhelmed the reason, conscience, and judgment, and whether the prisoner, in committing the act, acted from an irresistible and uncontrollable impulse.

If so, the act was not the act of a voluntary agent, but the involuntary act of the body, without the concurrence of the mind directing it. Every man is to be presumed to be sane, and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary be proved to the satisfaction of the jury, and to establish a defense on the ground of insanity, it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason from disease of mind as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know what was wrong; that he was unable to discriminate between right and wrong; that he was not therefore a moral agent, responsible in a legal sense for his acts, and a proper subject for punishment. One kind of insanity known to our law was "monomania," where the mind, in a diseased state, broods over one idea, and can not be reasoned out of it; and in this case, in order to find the act of the prisoner, if committed by him, to be not criminal, the jury must be clearly satisfied it was the result of the disease, and not of a mind capable of choosing; that it was the result of uncontrollable impulse, and not of a person acted upon by motives, and governed by the will.

On the other hand, it devolved upon the State to show that the prisoner committed the act as charged, with the malicious intent to

kill; and that the jury must be satisfied of the existence of such malice, at the time, beyond a reasonable doubt, in the prisoner, and that he had a sufficient degree of mental capacity or sanity, as to render him a fit subject of punishment upon the principles before suggested.

The court declining to charge otherwise than as before stated, the counsel for the prisoner excepted. The jury having rendered their verdict against the prisoner, he moved that the verdict be set aside, and for a new trial.

*E. A. Hibbard,* for the respondent.

The presiding judge declined to give either of the requested instructions, and expressly charged the jury differently on both points.

If the last paragraph of instructions should be found to be substantially correct, still the verdict must be set aside, if the other *instructions* were erroneous.

Now, there does seem to be some inconsistency between the different instructions, but the general drift was clearly contrary to our views of the law, and was so understood by the jury. If the court shall be of the opinion that the jury ought to have been satisfied beyond a reasonable doubt, of the respondent's sanity, or that a preponderance of evidence was sufficient to establish his insanity, then the presiding judge will not ask nor desire that the verdict should stand.

Must it then " be clearly proved," and the jury " be clearly satisfied" that the respondent was insane, or is a preponderance of evidence sufficient? Or must the jury be satisfied beyond a reasonable doubt of the respondent's sanity in order to convict?

In Massachusetts, it is now settled that a preponderance of evidence suffices. *Commonwealth* v. *Rogers,* 7 Met. 501; *Commonwealth* v. *Eddy,* 7 Gray 583, and cases cited by counsel.

It can not be that this court will establish any less merciful rule here; on the contrary, a step in advance will be taken *in favorem vitæ.* The jury ought to be satisfied of the sanity, as of all other points necessary to a conviction. It is the same as an *alibi,* self-defense, and the like.

The jury, upon the whole evidence, must be satisfied beyond a reasonable doubt that the respondent was not in another place, or if he committed the act, did not do it in self-defense, or was not insane, &c.

" It is difficult to see why the rule of proof beyond a reasonable doubt does not apply, or why a reasonable doubt of the sanity of the defendant should not require the jury to acquit." 2 Greenl. Ev. (10th edition), sec. 81, c. [This was written later than the passage from Professor Greenleaf quoted by the presiding judge.] See 1 Bennett & Heard's Leading Criminal Cases, note to *Commonwealth* v. *Rogers,* page 111; but more particularly see page 347, note to *Commonwealth* v. *McKie,* in which the whole subject is elaborately treated (although it is carelessly stated, in the leading case, that insanity as a defense stands on a different ground).

*Blair*, Solicitor, for the State.

The foundation of the defendant's brief is based substantially upon the reasoning of Mr. Bennett in 1 Bennett & Heard's Leading Criminal Cases, cited by the defendant, and the closing argument of Mr. Hale, in the case *Commonwealth* v. *Eddy*, 7 Gray 583, and cases cited by,him. Indeed the only legal authority to support the points suggested by the defendant to the presiding judge to charge the jury, which we have been able to find, is contained in *State* v. *Brenyeau*, 5 Ala. 244; *State* v. *Marler*, 2 Ala. 43; *Crawford* v. *State*, 12 Geo. 142, cited in Bennett & Heard 112–353–354.

The amount of the authority, as settled in Massachusetts, is, that a preponderance of evidence is sufficient to remove the presumption of sanity; but what preponderance? Is it such a preponderance as would suffice to support the defense of insanity in a civil action, or is it such a preponderance as to clearly prove to the satisfaction of the jury the insanity of the prisoner, at the time of committing the act? The position taken by the defendant that the preponderance of evidence to support the defense of insanity is the same as to support an *alibi* or self-defense, is not warranted by any thing either express or implied in the cases *Commonwealth* v. *Rogers*, or *Commonwealth* v. *Eddy*, cited by the defendant. Now the fallacy in the defendant's reasoning is this, that ignoring the presumption of sanity, or at least presuming the accused to be simply *primâ facie* sane, which the slightest breath of rebutting testimony may remove, he rests his case upon the Massachusetts authorities above mentioned, which do not ignore the presumption of sanity nor assert that any accused person is only *primâ facie* sane. There is a slight difference between presumptive and *primâ facie* evidence. If the defendant's premises, resting upon the cases cited, are correct, his conclusions, in order to be correct, can not base proof of insanity and an *alibi* upon the same ground, unless it is to be presumed that every accused person was present, when the offense, with which he stands charged, was committed; and, consequently, no evidence is required on the part of the government to establish that fact.

The charge of the presiding judge is supported by all the authorities in England touching the subject, and by most American authorities, although the last paragraph suggests a rule as merciful as any thing cited by the defendant.

The following authorities not only support the charge of the presiding judge, but contain almost his precise language: Whart. Am. Cr. Law 16; 1 Arch. Cr. Pl. and Ev. 11, note, wherein is cited *Clark* v. *State*, 12 Ohio 483; Rosc. Cr. Ev. 944–947–949–950; 1 Russ. on Cr. 8 and 9, note (8th Am. Ed.); 2 Greenl. on Ev., sec. 372, 373 (Ed. 1842).

BELLOWS, J. The defendant's counsel requested the court to charge the jury that, if it was more probable that the prisoner was insane than otherwise, it was their duty to find him not guilty by reason of insanity; and, also, that, although the burthen was on the prisoner to remove the natural presumption of sanity, the jury

must be satisfied, beyond a reasonable doubt, that he was a sane man, or else acquit him.

But the court declined to charge the jury according to either request, unless it be found in the direction "that the jury must be satisfied of the existence of such malice at the time, beyond a reasonable doubt, in the prisoner, and that he had a sufficient degree of mental capacity or sanity to render him a fit subject of punishment, upon the principles before suggested."

If the term "beyond a reasonable doubt" could be applied to the finding of the jury in respect to the sanity of the prisoner, it must be regarded as a full compliance with both branches of the request; because, if his sanity was established beyond all reasonable doubt, there could be no ground to claim that he was probably insane. But we think the term "beyond a reasonable doubt" can not be so applied, or at least not necessarily; and this is indicated by other parts of the charge, in which it is stated, in substance, that, to overcome the presumption of sanity, it must be clearly proved that the prisoner was laboring under such a disease of mind as to render him unable to discriminate between right and wrong; and again, that, to find the act not criminal, they must be clearly satisfied that it was the result of the disease, and not of a mind capable of choosing. It must be taken, then, that the judge declined to charge the jury that it would be sufficient if the prisoner's evidence rendered it more probable that he was insane than otherwise; or that they must be satisfied beyond a reasonable doubt that he was sane, and responsible for his acts. It must be taken, also, that evidence had been adduced tending to prove the prisoner's insanity; otherwise there was no occasion to give any instructions upon the subject.

Upon this state of the case, two questions arise :

1. Is it enough that the proof should render the insanity more probable than otherwise ?

2. Ought the prisoner to be found guilty, when, upon the whole evidence, there is a reasonable doubt of his sanity ?

Upon a careful examination of the questions, both upon principle and authority, we are of the opinion that the jury ought not to return a verdict of guilty, so long as a reasonable doubt rests in their minds of the prisoner's capacity to commit the offense charged, and this, of course, is an answer to both questions. Nor do we think it at all material whether the proof of insanity comes from the government or the accused, or part from each; but, however adduced, it is incumbent upon the prosecutor to satisfy the jury beyond a reasonable doubt of the existence of all the elements, including the necessary soundness of mind, that constitute the offense. We are aware that there is conflict in the adjudged cases upon this subject, and that highly respectable authorities have maintained that when insanity is set up as a defense, the burthen of proof is thrown upon the respondent, by force of the natural presumption of sanity, and that he must establish his defense by a preponderating weight of evidence; and that some cases have even gone so far as to hold that it must be sufficient to remove all reasonable

doubt of the insanity, as in the case of *State* v. *Spencer*, 1 N. J. 196 ; but we are unable to assent to either view, for reasons which we shall proceed to state.

The rule in criminal cases requiring the prosecutor to establish the guilt of the accused beyond a reasonable doubt, has its origin in the humane maxim, that it is better that many guilty persons escape than that one innocent person should suffer. This maxim, obviously, is not founded upon any technical rule or system of pleading, but is based upon broad principles of justice, which forbid the infliction of punishment until the commission of the crime is to a reasonable certainty established. It has received the sanction of the most enlightened jurists in all civilized communities, and in all ages ; and, with the increasing regard for human life and individual security, it is quite apparent that the energy of the rule is in no degree impaired. When the evidence is all before the jury, they are to weigh it, without regard to the side from which it comes, and determine whether or not the guilt of the prisoner has been established beyond a reasonable doubt. To hold that the quantity and weight of the evidence is in any degree affected by the fact that the prosecutor has been able to make a case without introducing any matter in excuse or justification, is clearly contrary to the spirit of the rule, and is giving to mere form an effect which, in many cases, must be contemplated with great pain ; inasmuch as juries might feel bound to find the prisoner guilty of a capital crime, when, in their consciences, they had serious doubts of the existence of malice or of mental capacity sufficient to charge the prisoner. Such a doctrine must inevitably lead to a constant struggle, on the part of the prosecutor, to prove his case without introducing any evidence of those facts or circumstances upon which the respondent is understood to rely. In a large number of cases, with skillful management, he might succeed, and thus deprive the accused of that protection which the rule, independent of all technicality or matters of form, was designed to afford.

The conflict which exists has probably arisen, in a great degree, from an attempt to apply to criminal causes the rules which govern the trial of issues in civil causes. In the latter, where the defendant sets up matter in excuse or avoidance, he must establish the defense by a preponderance of proof ; and by analogy it has sometimes been held, in criminal cases, that matters of defense arising from accident, necessity, or infirmity, must be established by a like preponderance of proof. In some cases it has been carried so far as to require the same quantity of evidence to prove such matters of defense as to prove the commission of the crime, namely, enough to remove all reasonable doubt. But we think there are marked distinctions between the two classes of trials, and that the rules as to the weight of evidence and burthen of proof in civil cases, are not safe guides in criminal causes. In civil causes the burthen of proof is, in general, upon the party who maintains the affirmative ; and, when thrown upon the defendant, it is because he sets up, by his plea, matters which avoid the effect of the plaintiff's allegations, but do not deny them. It is, therefore, right that the burthen of

proof should be upon him to establish the truth of such matters in avoidance by a preponderance of evidence, especially as nothing more is required than to render the truth of such matters more probable than otherwise. In criminal causes, the trial is usually had upon a plea that puts in issue all the allegations in the indictment; and, upon every sound principle of pleading and evidence, the burthen is upon the prosecutor to sustain them by satisfactory proofs. A system of rules, therefore, by which the burthen is shifted upon the accused of showing any of the substantial allegations in the indictment to be untrue, or, in other words, to prove a negative, is purely artificial and formal, and utterly at war with the humane principle which, *in favorem vitœ*, requires the guilt of the prisoner to be established beyond reasonable doubt. Not only so, but, fairly considered, such a system derives no countenance from the rules which govern the trials of civil causes, inasmuch as in respect to all the allegations in the declaration, provided they are put in issue, the burthen of proof, in general, rests with the plaintiff.

The indictment in this case is for an assault with intent to commit murder; and, by the well settled definition of the offense, murder is when a person of sound memory and discretion unlawfully kills any reasonable creature in being under the peace of the State, with malice aforesaid, either express or implied. To justify a conviction, all the elements of the crime, as here defined, must be shown to exist, and to a moral certainty, including the facts of a sound memory, an unlawful killing, and malice. As to the first, the natural presumption of sanity is *primâ facie* proof of a sound memory, and that must stand unless there is other evidence tending to prove the contrary; and then whether it come from the one side or the other, in weighing it, the defendant is entitled to the benefit of all reasonable doubt, just the same as upon the point of an unlawful killing or malice. Indeed the want of sound memory repels the proof of malice, in the same way as proof that the killing was accidental, in self-defense, or in heat of blood; and there can be no solid distinction founded upon the fact that the law presumes the existence of a sound memory. So the law infers malice from the killing when that is shown, and nothing else; but in both cases the inference is one of fact, and it is for the jury to say whether, on all the evidence before them, the malice or the sanity is proved or not. Indeed we regard these inferences of fact as not designed to interfere in any way with the obligation of the prosecutor to remove all reasonable doubt of guilt; but are applied as the suggestions of experience, and with a view to the convenience and expedition of trials, leaving the evidence, when adduced, to be weighed without regard to the fact whether it come from the one side or the other.

Our opinion, then, is, that the inference which the law makes of sanity, malice, and the like, is to be regarded as merely a matter of evidence, and standing upon the same ground as the testimony of a witness; 1 Greenl. Ev., secs. 33, 34; and in this respect is like the presumption of innocence. See *Sutton* v. *Sadler*, 91 Com. Law 87. Nor does it shift the burthen of proof in the sense of changing the rule as to the quantity of evidence; but is merely *primâ facie*

proof of the sanity, or malice, upon which, other things being shown, the jury may find a verdict of guilty. If further evidence is offered upon the point, by either party, tending to repel the presumption, the whole must be weighed by the jury, who are to determine whether the guilt of the prisoner is established beyond a reasonable doubt. The criminal intent must be proved as much as the overt act, and without a sound mind such intent could not exist; and the burthen of proof must always remain with the prosecutor to prove both the act and criminal intent.

In the English courts, the direct question does not appear to have been discussed, though it is laid down by elementary writers, that when the defense is insanity, the burthen of proving it is upon the prisoner. Rosc. Ev. (5th Am. Ed.) 944; 1 Russ. on Cr. 10. Citing Bellingham's case, 1 Callison on Lunacy 636, and Rosc. Ev. 946, and note to *Rex* v. *Offord*, 5 C. & P. 168, where the judge told the jury, that to support such defense, it ought to be proved, beyond reasonable doubt, that the respondent was insane. In ·Foster's Crown Law 255, it is said, "In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence produced against him; for the law presumeth the fact to have been founded in malice, until the contrary appeareth; and very right it is that the law should so presume. The defendant, in this instance, standeth just upon the same ground that every other defendant doth; the matters tending to justify, excuse, or alleviate, must appear in evidence before he can avail himself of them." So it is laid down in 1 East Cr. Law 224–340, and Hawk. Pl., ch. 31, sec. 32; 4 Bl. Com. 201. On this point, Ornby's case (reported 2 Str. 766, and, also, in Ld. Raym. 1485, and decided in 1727) is relied upon as a leading case; but it will be observed that the question of the quantity of evidence was not at all considered, and its weight, as an authority, is greatly diminished by the fact that it was then held, that whether there was malice or not, was a question of law; and so, also, whether the act was deliberate or in the heat of passion. In the opinion of the judges, in answer to questions propounded by the House of Lords (reported in note to *Regina* v. *Higginson*, 1 C. & K. 130), *Tindall*, C. J., says, "Every man is presumed to be sane and responsible for his crimes, until the contrary is shown to the satisfaction of the jury; and that to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know it was wrong."

Another class of cases in the English courts, are referred to in Wharton's Criminal Law, 264, 265, as cases where the facts of the prosecution are conceded, but the defendant sets up some matter in excuse or avoidance; in which event, it is said that the presumption of innocence no longer works for the defense, and such matter of excuse or avoidance should be proved by the defendant by a preponderance of testimony. The cases cited in support of this

doctrine, are prosecutions for selling liquor without license, shooting game without the necessary qualifications, practicing medicine without a certificate, and the like. Some of these cases were civil suits, brought for the penalty, and the substance of the doctrine held in them all, was, that the affirmative of the facts being with the defendant, and matter being peculiarly within his knowledge, the burthen of proof was upon him. But the question before the court in this case, was not considered, and it was no where announced that in case evidence was adduced by the defendant, tending to prove such fact, the jury must require that it should be made to preponderate in his favor.

It will be perceived, then, that according to the general statement of the English doctrine, which is fairly expressed in the extract from Foster's Crown Law which we have quoted, the obligation of proving any circumstances of accident, necessity, or infirmity, which may be set up as a defense to a charge of murder or other crime, is thrown upon the prisoner; unless such proof arises out of the evidence offered by the prosecution. It is said, indeed, that such circumstances must be satisfactorily proved; but it is not stated by what quantity of evidence, whether such as to preponderate in favor of the prisoner, or whether he is to be entitled to the benefit of reasonable doubts, as in other cases. When we consider, however, that the passage clearly applies to every thing which rebuts malice, whether by showing that the act was justifiable, was done in necessary self-defense, or that the prisoner was not capable of committing the crime by reason of insanity, it may well be urged that nothing more was intended than this. If the prosecutor has proved the commission of the offense without disclosing any circumstance of justification, necessity, or infirmity, or other matter of defense relied upon by the accused, then the burthen will be upon the latter, to offer so much proof of the matters constituting his defense, as will, upon the rules of law, entitle him to a verdict of not guilty. Not that his proof shall be sufficient to establish such facts by a preponderance of evidence, but sufficient to entitle him to an acquittal. If it were not so, what shall be the rule when some evidence of the matter in excuse or justification unavoidably creeps in with the government proof, and still the accused offers more to the same facts? To hold that the rule upon which the life or death of a human being may depend, is to be affected by a circumstance so trivial before any enlightened conscience, would be giving to mere form a weight wholly inconsistent with the humane spirit of our criminal laws. In the opinion of *Tindall*, C. J., before cited, which was given without argument, and without the attention of the court being distinctly drawn to this point, it is by no means clear that any different rule. as to the quantity of evidence, was intended to be announced, although there may be some expressions tending that way.

In *Commonwealth* v. *York*, 9 Met. 93, it was decided that malice was to be inferred from a willful and voluntary killing, unless it was proved by a preponderance of evidence, by the accused, that the act was done in an affray in the heat of blood. The opinion was

pronounced by *Shaw,* C. J., after a most able and thorough exam-
ination of the authorities, and it is apparent that he gave great
weight to the statement of Sir Michael Foster, which we have cited.
The court, however, were not unanimous, *Wilde,* J., having deliv-
ered an able dissenting opinion. In the previous case of *Common-
wealth* v. *Rogers,* 7 Met. 504, it was held, that the ordinary presump-
tion of sanity must stand, until rebutted either by evidence offered
by government or by the prisoner; and in either case, the evidence
must be sufficient to establish the fact of insanity. Subsequently,
in *Commonwealth* v. *Haskins,* 3 Gray 463, the doctrine of *Common-
wealth* v. *York* was restricted by *Shaw,* C. J., to cases where the
killing was proved, and nothing else; but it was held that, where
the circumstances were fully shown, the burden was upon the State
to show the malice beyond a reasonable doubt. The cases of *Com-
monwealth* v. *Rogers* and *Commonwealth* v. *York,* put upon the same
ground, the rebutting of malice, by showing that the act was done
during an affray, in the heat of passion, and that by reason of
insanity, the accused was incapable of malice. And it is quite
obvious, we think, that in principle, there is no difference; in
both cases the same element of the crime is proved not to exist,
and the indictment, therefore, is not sustained; and to that effect,
is the doctrine of the passage before cited, from Foster's Crown
Law.

The general doctrine of *Commonwealth* v. *York* has been followed
in several of the American courts, giving it as authority. *People* v.
*Milgate,* 5 Cal. 127; *Graham* v. *Commonwealth,* 16 B. Mon. 587;
*State* v. *Stark,* 1 Strobh. 479; *State* v. *Spencer,* 1 N. J. 196. The
doctrine of *Commonwealth* v. *York* has since been greatly shaken,
if not overthrown, in *Commonwealth* v. *McKie,* 1 Gray 61, in an
able opinion of *Bigelow,* J., which decided that where evidence of
the facts constituting a justification, came from both sides, the bur-
den of proof remained on the government throughout, to remove
all reasonable doubt of guilt; and the reasons assigned apply with
equal force, when such evidence all comes from the prisoner. It is
true, that the learned judge says, "There may be cases where a
defendant relies upon some distinct, substantial ground of defense,
not necessarily connected with the transaction on which the indict-
ment is founded, in which the burden of proof is shifted upon the
defendant"; and he instances the case of insanity, but expresses no
opinion upon it. It was, however, held in a subsequent case (*Com-
monwealth* v. *Eddy,* 7 Gray 583), that the burden of proof resting
on the government, is sustained so far as the defendant's mental
capacity is concerned, by the presumption of sanity, until rebutted
and overcome by a preponderance of the whole evidence; thus
giving to the presumption of sanity an effect that is not given by
the doctrine of *Commonwealth* v. *McKie,* to the presumption of mal-
ice; which, nevertheless, as we think, stands upon the same ground.
According to these decisions, then, the rule in Massachusetts, as to
the quantity of evidence to establish a defense, arising from acci-
dent or necessity, now corresponds with the views we entertain;
and with our construction of the passage cited from Foster's Crown

Law; and the principle of the rule includes, also, the defense arising from insanity, or infirmity.

In accordance with our views is the doctrine of *People* v. *McCann*, 16 N. Y. (2 Smith) 58, where the subject is most ably discussed. *Ogleton* v. *State*, 28 Ala. 692; *United States* v. *McClure*, U. S. District Court, 7 Law Rep. (N. S.) 439, by *Sprague*, J.; 1 Am. Lead. Cr. Cases 347, and note, and cases cited.

Such, also, we think, has been the course of trials in this State. It was clearly so on the trial of Corey, in Cheshire County, for murder, in 1830, October term, before the Superior Court of Judicature, *Richardson*, C. J., presiding, where the defense set up was insanity. The court charged the jury, that the State had no claim to their verdict until they were satisfied, beyond all reasonable doubt, that the prisoner was guilty; and in that case the only question was, whether he was insane, the guilt otherwise being clear.

So was *State* v. *Prescott*, tried in Merrimack County, September, 1834, before *Richardson*, C. J. In that case, which was for the murder of Mrs. Cochran, the fact of killing was also clear, and the only defense was insanity. The judge charged the jury, that it was their duty not to pronounce the respondent guilty until every reasonable doubt of his guilt was removed from their minds. And, again, he said, "We are of the opinion that if, under all the circumstances of the case, you have any reasonable ground to suppose that the prisoner could not have had the use of his reason, you are bound to acquit him."

With these views of the law, and the course of our own courts, there must be

*A new trial.*