STATE (ex rel. Cunningham) v. RAY.

A statute which authorizes a justice of the peace to commit to the indus-
trial school a minor under the age of seventeen years, upon a com-
plaint charging a crime with respect to which the jurisdiction of the
justice only extends to requiring the accused to recognize with sure-
ties for his appearance at court, is in conflict with art. 15 of the bill
of rights.

HABEAS CORPUS. The relator is the father of John Cunning-
ham, aged sixteen years, and of Eddie Cunningham, aged thirteen
years, who were arraigned upon a complaint for burglary before a
justice of the peace June 10, 1884, and pleaded not guilty. After
an examination, the justice ordered them to recognize in the sum
of one hundred dollars each, with sureties, for their appearance at
the October term of this court; but immediately thereafter, upon
the application of the state's counsel, under Gen. Laws, c. 287, s.
14, and without the consent of said minors or their friends, the
justice revoked the order to recognize, refused to take bail, and
sentenced John to the industrial school for two years and Eddie
for three years, and issued a mittimus for their commitment, which
was executed June 12.

At this term, Ray, as superintendent of the industrial school,
having produced them before the court on a writ of *habeas corpus*
issued upon the relator's petition, a hearing was had, and they were
discharged on the ground that the justice had no jurisdiction to
impose the sentence aforesaid, and the defendant excepted.

*Haskins & Stoddard* (of Vermont), for the relator.

*Lane & Dole*, for the respondent.

SMITH, J. "When any minor under the age of seventeen years,
charged with any offence punishable by imprisonment otherwise
than for life, shall be convicted and sentenced accordingly, or shall
be ordered to recognize for his appearance at the supreme court,
the court or justice, upon application of such minor, his friends, or
the state's counsel, may order, that instead of such imprisonment
or recognizance the said minor may be sent and kept employed and
instructed at the reform school for such term, not less than one
year nor extending beyond the age of twenty-one years, as said
court shall judge most for his true interest and benefit, provided
he shall conduct himself according to the regulations of said school,
and a copy of such order shall be sufficient authority for his com-
mitment and detention at such school." G. L., c. 287, s 14. By
c. 37, Laws 1881, the name of the institution was changed to the
industrial school. Under the authority of this statute, the rela-
tor's minor sons, one of the age of thirteen and the other of the

age of sixteen years, have been sent to the industrial school for the terms of three and two years respectively, neither having been convicted of any crime or offence.    They were brought before a justice of the peace upon a complaint charging them with having committed the crime of burglary, a crime of the gravest character, and punishable by imprisonment in the state prison for a long term of years.    The crime was one which the magistrate had not jurisdiction to determine, but only to inquire if just cause appeared to hold the accused to answer at the supreme court.    They were heard upon no other charge than that set out in the complaint, and were not in law required to defend against any other.    An order was made requiring them to recognize for their appearance before the supreme court.    So far the justice had jurisdiction.    At this stage of the proceedings, the counsel for the state moved for an order that the accused be sent to the industrial school, and the justice, declining the offer of the accused to recognize agreeably to the order then just made by him, issued an order committing them to the school for the terms above mentioned.    The commitment was not for the purpose of securing their appearance at the supreme court, for the shortest term for which they might be sent to the school would extend much beyond the next term of the supreme court.    If they were committed as a punishment for having committed the crime of burglary, they have never been tried or convicted of that crime by the judgment of their peers.    Article 15 of the bill of rights provides that "no subject shall be arrested, imprisoned, despoiled or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land."    This clause in our constitution is a translation from *Magna Charta*, and dates from 1215.    Its meaning has become fixed and well determined, "and asserts the right of every citizen to be secure from all arrests not warranted by law."    *Mayo* v. *Wilson*, 1 N. H. 53, 57.    It guarantees the right of trial by jury in all cases where the right existed at common law in this state at the adoption of the constitution.    That a person charged with having committed the crime of burglary is entitled to a jury trial, has never been questioned.    As the justice only had jurisdiction to inquire and not to convict, the accused have had no trial.    Provision is, and ever since the adoption of the constitution has been, made by statute for a trial by jury of every crime indictable by a grand jury, and of every offence where an appeal is taken from the judgment of a justice or police court.    Final judgment cannot be enforced for the commission of any police offence, however trivial, until the appellant has been convicted by a jury of his peers.    If the relator's sons were sent to the industrial school for some other crime or offence, it was one of which they have never been convicted, and in violation of art. 15 of the bill of rights, which provides that "No subject shall be held to answer for any crime or

offence until the same is fully and plainly, substantially and for-
mally, described to him, or be compelled to accuse or furnish evi-
dence against himself. And every subject shall have a right to
produce all proofs that may be favorable to himself, to meet the wit-
nesses against him face to face, and to be fully heard in his defence
by himself and counsel."

But the commitment and detention of the relator's sons is justi-
fied by the respondent upon the ground that the industrial school
is not a prison, that the order of commitment was not a sentence,
and that their detention is not a punishment. The contention is,
that the industrial school is a part of the school system of the state,
and that the state as *parens patriæ* may detain in the school such
scholars as may need its discipline. If it is a privilege to be ad-
mitted a member of the school, it is a privilege limited to " offend-
ers against the laws." At no time since its institution in 1855
have its doors been open to the admission of any other class of
scholars. Its advantages have not been offered to every minor
under the age of seventeen years who might desire to enter, or
whose parents or guardian might seek to place him there.

The relator's sons were sent to the school, either because they
had committed some crime or offence, or because the justice judged
it to be for their " interest and benefit" to be placed there. For
whichever of these causes they were committed, the commitment
was illegal. As already remarked, they have never been convicted
of the crime of burglary; and they have not been tried or had
any opportunity to defend against any other charge. If the order
for their commitment was made because the justice judged it to be
for their " interest and benefit," the answer is, that he had no author-
ity by statute to commit them for that cause. Whenever a court or
a justice may send a minor to the school, he may fix the term during
which he may be kept at the school at not less than one year nor
extending beyond the age of twenty-one years, as the court or jus-
tice " shall judge most for his true interest and benefit." The
limit of his stay or confinement in the school is determined by the
consideration of what shall be " most for his true interest and
benefit;" but the statute does not confer upon the court or justice
the power to send a minor to the school solely for the reason that
the court or justice may be of opinion that it may be for the
interest or benefit of the minor to be sent there.

The original name of the school—" House of reformation for
juvenile and female offenders against the laws " (Laws 1855, *c.*
1660)—indicated the character of the institution. The act provid-
ed that any boy under the age of eighteen years, or any female of
any age, " convicted of any offence known to the laws of this state
and punishable by imprisonment other than such as may be pun-
ished by imprisonment for life," might be sentenced to the house
of reformation. *Ib., s.* 4. At no period in its history could a per-
son become an inmate of the institution, unless, being within the

prescribed age, he or she had been convicted of a crime or offence. The only exception is the unconstitutional provision inserted in the revision of 1867 (Gen. Sts., c. 269, s. 14, G. L., c. 287, s. 14), authorizing a justice to send to the school a minor less than seventeen years of age whom he shall have ordered to recognize for his appearance at the supreme court. We cannot ignore the fact that in the public estimation the school has always been regarded as a quasi penal institution, and the detention of its inmates or scholars as involuntary and constrained. The great purpose of the institution was, the separation of youthful offenders from hardened criminals of mature years, in the hope of their ultimate reformation and of their becoming useful citizens. But the fact cannot be overlooked, that the detention of the inmates is regarded to some extent in the nature of a punishment, with more or less of disgrace attached on that account. If the order committing a minor to the school is not a sentence but the substitute for a sentence, as claimed by the respondent, what is a substitute for a sentence but a sentence in and of itself?

It is worthy of remark, that the legislature has not undertaken to authorize the commitment of a minor to the industrial school upon the mere presentment of the grand jury.

In this case, the relator, the natural guardian of his sons, has been deprived of their care, nurture, education, and custody, against his consent, and without any trial or hearing to which he was a party, upon the ground, and only ground, that the justice found there was just cause to require them to appear at the supreme court to answer further. If he is not a suitable person to have the care and education of his children, that fact has not been found, nor does it appear that their education has been neglected. But how far he is entitled to be heard upon that question we do not decide. We have only alluded to the matter as showing what consequences may flow from the unlawful commitment of a minor to this school. Where the commitment is lawful, the loss by the parent of the custody of his child follows as one of the incidents for which there is no remedy, and perhaps in many instances, because of his unfitness, there ought to be none.

It is further deserving of consideration, that the relator's sons, if indicted for the crime of which they were charged before the justice, cannot plead *autrefois convict*, although they may remain at the school the full term for which they were sentenced: and if their detention at the school is a punishment, they are liable to be punished twice for the same offence, in violation of the fundamental maxim, "*nemo debet bis puniri*," &c.     Broom Leg. Max. 348.

In coming to this conclusion we have not overlooked the decisions in other states. *Milwaukee Industrial School v. Supervisors Milwaukee County*, 40 Wis. 328—*S. C.*, 22 Am. R. 702; *McLean County v. Humphreys*, 104 Ill. 378; *Petition of Ferrier*, 103 Ill. 367—*S. C.*, 42 Am. R. 10; *Roth and Boyle v. House of Refuge*,

31 Md. 329; *Ex parte Crouse*, 4 Whart. (Penn.) 9. In these cases the detention of abandoned, dependent, or depraved children in houses of refuge, or in industrial or reform schools, is upheld upon the ground that the power of magistrates and county courts to commit, and of such institutions to detain, such children, is "of the same character of the jurisdiction exercised by the court of chancery over the persons and property of infants, having foundation in the prerogative of the crown, flowing from its general power and duty as *parens patriæ* to protect those who have no other lawful protector—2 Story Eq. Jur., *s.* 1333" *(Sheldon, J., in Petition of Ferrier, supra);* or, as stated in *Ex parte Crouse, supra,* "May not the natural parents, when unequal to the task of education, or unworthy of it, be superseded by the *parens patriæ,* or common guardian of the community?" As to the soundness of the reasons given in these cases we have nothing to say. No one of them is an authority for the commitment of a minor charged with the commission of a crime to such an institution, without some kind of a trial and conviction.

*The People* v. *Turner*, 55 Ill. 280, *S. C.*, 8 Am. R. 645, was an application by the father for a writ of *habeas corpus* for the discharge from a reform school of his minor son. A statute of Illinois authorized the commitment to a reform school of children between six and sixteen years of age who are "vagrants, or destitute of proper parental care, or are growing up in mendicancy, idleness, or vice, to remain until reformed, or until the age of twenty-one years." The relator's son, committed to the school under this statute, was discharged, the commitment being held not to have been for any criminal offence, and the statute was declared unconstitutional. His confinement was held to be imprisonment without due process of law. *Thornton*, J, said,—"Such a restraint upon natural liberty is tyranny and oppression. *   *   * If a father confined or imprisoned his child for one year, the majesty of the law would frown upon the unnatural act, and every tender mother and kind father would rise up in arms against such monstrous inhumanity. Can the state, as *parens patriæ,* excede the power of the natural parent, except in punishing crime?"

In *Commonwealth* v. *Horregan*, 127 Mass. 450, it was held that certain statutes relating to juvenile offenders, so far as they purport to give inferior tribunals jurisdiction of offences punishable by infamous punishment, are unconstitutional.

A statute of Ohio authorized the grand jury, where a minor under the age of sixteen years is charged with crime, and the charge appears to be supported by evidence sufficient to put the accused upon trial, instead of finding an indictment, to return to the court that the accused is a suitable person to be committed to the house of refuge, and directed the court thereupon to order his commitment without trial by jury. The statute was declared constitutional. *Prescott* v. *The State*, 19 Ohio St. 184—*S. C.*, 2

Am. R. 388.   The decision is put upon the ground that the case "is neither a criminal prosecution, nor a proceeding according to the course of the common law, in which the right to a trial by jury is guaranteed.   The proceeding is purely statutory; and the commitment, in cases like the present, is not designed as a punishment for crime, but to place minors, of the description and for the causes specified in the statute, under the guardianship of the public authorities named, for proper care and discipline, until they are reformed, or arrive at the age of majority.   The institution to which they are committed is a school, not a prison, nor is the character of their detention affected by the fact that it is also a place where juvenile convicts may be sent, who would otherwise be condemned to confinement in the common jail or the penitentiary." The statute further provided, that in case the cause for the child's detention shall be inquired into by a proceeding in *habeas corpus*, it shall be a sufficient return to the writ that he was committed to the guardianship of the directors of the school, and that the period for his discharge had not arrived.   It is intimated in the opinion of the court that it is questionable whether this provision can operate to restrict the power of the court, invested by the constitution with jurisdiction in *habeas corpus*, from inquiring fully into the cause of the detention of a person restrained of his liberty.

With due respect for the learned court who pronounced this opinion, we are not convinced of the soundness of its reasoning or conclusion.   The proceedings by which the accused was adjudged a suitable person to be committed to the house of refuge were conducted in secret, without his knowledge or consent, or that of his parent or guardian, with no opportunity to be represented by counsel, to be confronted with and cross-examine the witnesses for the prosecution, or to produce witnesses in his own behalf.   The liberty of the minor during the term of his minority, which might be for a period of many years, was made to depend upon the deliberations of a secret tribunal.   A judgment rendered upon such an *ex parte* hearing is as little calculated to command the respect of the community as the proceedings of the ancient court of star chamber.   And so far as the other cases cited are like the Ohio case in legal effect, we cannot follow them.

Whether what has been called a trial in other jurisdictions in cases of this class is a trial within the meaning of our constitution, and whether, on any ground than that of a charge of crime, the legislature can authorize minors or persons of age to be committed to the industrial school without a trial by jury, if it were claimed, and without the consent of parent or other guardian, are questions on which we give no opinion.

Persons poor and standing in need of relief may and must be cared for by the overseers of the poor, and may be sent to the almshouse for support, but their detention cannot be regarded as involuntary.   They are in no sense deprived of their liberty without

the judgment of their peers or against the law of the land. They are neither criminals nor charged with the commission of crime, and this provision of the constitution was not understood by its framers as restricting the power of the legislature to provide for the relief of the worthy poor. So children of profligate parents, or with vicious surroundings, may be taken from the custody of their natural guardians and committed to the guardianship of those who will properly care for their moral, intellectual, and physical welfare. *Prime* v. *Foote, ante* 52. But this is a power exercised by the state as *parens patriæ* in the welfare and interest of its citizens. 2 Stor. Eq. Jur., s. 1333.

The common-law principle of reasonable necessity has an extensive constitutional operation (*Aldrich* v. *Wright*, 53 N. H. 398, 399, 400, *Haley* v. *Colcord*, 59 N. H. 7, 8, *Hopkins* v. *Dickson*, 59 N. H. 235, *Johnson* v. *Perry*, 56 Vt. 703, *State* v. *Morgan*, 59 N. H. 322, 325), and in many cases authorizes the restraint of an insane person (*Colby* v. *Jackson*, 12 N. H. 526, *Davis* v. *Merrill*, 47 N. H. 208, *O'Connor* v. *Bucklin*, 59 N. H. 589, 591, *Keleher* v. *Putnam*, 60 N. H. 30, *Hinchman* v. *Richie*, Bright. (Penn.) 143; *Fletcher* v. *Fletcher*, 1 E. & E. 420, Buswell on Insanity, *ss.* 19–24), even when he is committed to an asylum upon a defective process. *Shuttleworth's Case*, 9 Ad. & E. N. S. 651. But a magistrate's power to commit to the industrial school, for detention during minority, every person under the age of seventeen years charged with but not convicted of an offence punishable by imprisonment otherwise than for life, on the ground of the "true interest and benefit" of the accused, does not come within any constitutional idea of reasonable necessity that has prevailed in this state. For his interest and benefit the magistrate might as well be authorized to send him to the state prison as to the industrial school, or any other penal institution.

We are of opinion that so much of *s.* 14, *c.* 287, Gen. Laws, as authorizes a justice of the peace to commit to the industrial school a minor under the age of seventeen years, upon a complaint charging him with the commission of a crime of which the justice has jurisdiction only to require him to recognize for his appearance at the supreme court, on the motion of the state's attorney and without the consent of any person authorized to bind the minor by consent, is in violation of article 15 of the bill of rights.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.