Merrimack
No. 7840

VIKTOR NOVOSEL

v.

RAYMOND HELGEMOE, WARDEN

March 10, 1978

116

*McSwiney, Jones & Semple,* of Concord (*Carroll F. Jones* and *Nina Kraut* orally), for the plaintiff.

*David H. Souter,* attorney general (*Richard B. McNamara,* assistant attorney general, orally), for the State.

DOUGLAS, J.  This is an appeal from the denial of plaintiff's petition for a writ of habeas corpus seeking his release from the forensic unit of the New Hampshire Hospital. The plaintiff's exceptions to this order were transferred to this court by *Keller,* C.J. This court reverses the order below and outlines the procedures to be used by the superior court in criminal cases when insanity is, or might be, an issue.

On December 24, 1974, plaintiff was arrested and charged with the murder in the first degree of Helen Morrison. In January 1975, the plaintiff was indicted by the Merrimack County Grand Jury for the crime of second degree murder. In response to the lower court's granting of the State's motion for a pretrial psychiatric examination, the defense filed a notice of its intent to rely on the defense of insanity. This notice, however, was not signed by the defendant and was later withdrawn.

After the defense withdrew its notice, the State, believing the plaintiff to be insane, requested that the grand jury be reconvened pursuant to RSA 651:8. Under this statutory provision, the grand jury has the power to decline to indict if it is convinced that the accused is insane. The trial court's duty, pursuant to RSA 651:9 (Supp. 1975), is then to make the discretionary determination whether the accused should be released or committed to the State's prison or hospital.

The defendant objected to this procedure, alleging that RSA 651:8 and RSA 651:9 (Supp. 1975) violated the due process and equal protection clauses of the Federal Constitution. These issues were reserved and transferred to this court by *Keller,* C.J. This

court held that the trial court had the discretionary authority to reconvene the grand jury, and that the statutes challenged were constitutional. *State v. Novosel,* 115 N.H. 302, 339 A.2d 16 (1975).

Following that decision on June 9, 1975, the grand jury was recalled. Under the provisions of RSA 651:8 it omitted to return an indictment against the plaintiff and certified him to the court as insane. The plaintiff was refused the privilege of presenting evidence to the grand jury and objected to the proceeding.

On June 12, 1975, after a hearing in the Merrimack County Superior Court conducted under the provisions of RSA 651:9 (Supp. 1975) and 135:30-a (Supp. 1975), the plaintiff was committed to the New Hampshire State Prison and Hospital for life until or unless earlier discharged, released or transferred by due course of law. The court directed that the order be reviewed at the expiration of two years. *See* RSA 651:11-a (Supp. 1975).

The instant petition was filed on December 3, 1976. A hearing was held before *Keller,* C.J. on February 18, 1977, resulting in the February 22 order denying plaintiff's petition.

Throughout the proceedings from the day of his arrest, the plaintiff has contended first, that he is sane and second, that he is not guilty of any crime. He further contends that the action of the grand jury in June 1975, denied him, in one broad sweep, all the due process guarantees afforded to one accused of the commission of a crime. He argues that the procedure followed by the State denied him the opportunity to ever contest the allegations lodged against him or to present rebuttal evidence on the question of his sanity. He was "whisked away into the twilight world of the insane and subjected to a committal hearing where the only issue was his dangerousness to be at large, protesting in vain that he did not commit the original crime with which he was charged." *Kanteles v. Wheelock,* 439 F. Supp. 505 (D.N.H. 1977).

The factual setting of the instant case bears a marked similarity to the facts of *State v. Ray,* 63 N.H. 406 (1885). In that case, two minors accused of burglary had been committed to the industrial school without a trial under a statutory provision effective at that time. The State defended this procedure on the ground that

> the industrial school is not a prison, that the order of
> commitment was not a sentence, and that their detention
> is not punishment. The contention is, that the industrial
> school is a part of the school system of the state, and that

the state as *parens patriae* may detain in the school such scholars as may need its discipline.

*Id.* at 408.

The factual analogy to the plaintiff's case is clear. The plaintiff was not convicted of any crime, was not tried, and had no opportunity to defend. The forensic unit in which he is currently confined is comparable to the industrial school in that it is restricted to those accused of criminal behavior and the detention is "involuntary and constrained." *State v. Ray,* 63 N.H. at 409. The legislature clearly has in mind a separate class when criminal commitment is concerned.

This court in *Ray* analyzed an Ohio statute that authorized a grand jury to omit returning an indictment against a minor and instead make a return to the court that the minor was a suitable person to be committed to the house of refuge. Although such procedure had been held constitutional under Ohio law at the time, this court was "not convinced of the soundness of its reasoning or conclusion:"

> The proceedings by which the accused was adjudged a suitable person to be committed to the house of refuge were conducted in secret, without his knowledge or consent, or that of his parent or guardian, with no opportunity to be represented by counsel, to be confronted with and cross-examine the witnesses for the prosecution, or to produce witnesses in his own behalf . . . . A judgment rendered upon such an *ex parte* hearing is as little calculated to command the respect of the community as the proceedings of the ancient court of star chamber. *State v. Ray,* 63 N.H. at 411.

It is therefore clear that this court is suspect of procedures that purport to aid and benefit the accused at the expense of constitutional safeguards. The plaintiff argues that the grand jury is not an appropriate body for a determination of insanity, given the *ex parte* nature of its proceedings and its historical nature as an accusatory body whose standard of review is probable cause.

> A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. *United States v. Knowles,* 147 F. Supp. 19–21 (D.D.C. 1957).

In the instant case, no court has ever passed upon the guilt or innocence of the plaintiff. He has never admitted committing the crime charged; he has been denied the opportunity to confront and cross-examine witnesses, to present evidence in his own behalf, and to have a determination of his culpability.

In *Kanteles v. Wheelock*, 439 F. Supp. 505 (D.N.H. 1977), the federal district court determined that if the due process clause becomes involved "only at the [committal] hearing during which the Superior Court Judge inquires as to [the petitioner's] dangerousness [pursuant to 651:9 (Supp. 1975) and 135:30-a (Supp. 1975)], then petitioner has suffered no harm." The court found, however, that at this stage in the proceedings the procedural safeguards came too late.

The critical question of sanity has already been determined.

> It is the grand jury's determination of insanity certified to the Superior Court which is both the first step in the process which ultimately leads to committal and the last step at which any evidence on the underlying alleged incident is considered. . . . Once the grand jury finds him insane, the petitioner stands to suffer loss of liberty and the stigma of criminal commitment without being convicted of a crime. It is, therefore, at this stage where due process safeguards should attach. *Kanteles v. Wheelock*, 439 F. Supp. at 510 (footnote omitted).

The court concluded that the provisions challenged in *Kanteles,* and in the instant case, were unconstitutional because due process is required at this critical stage. Relying on *In Re Gault*, 387 U.S. 1 (1967) and *Lynch v. Overholser*, 369 U.S. 705 (1962), the court in *Kanteles* found a host of due process violations operative and inherent in the grand jury provision of 651:8: the grand jury proceedings are secret and without adversaries; cross-examination of witnesses does not take place; a written record from which an appeal may be taken is not required; the accused may be compelled to appear without benefit of counsel present; hearsay evidence is considered; and probable cause rather than proof beyond a reasonable doubt is the standard by which determinations are made. *Kanteles v. Wheelock*, 439 F. Supp. at 511.

■ We agree with the *Kanteles* court and conclude that the State due process clause, N.H. Const. pt. 1, art. 15, mandates the unconstitutionality of that part of RSA 651:8 relating to the grand

jury. *State v. Novosel,* 115 N.H. 302, 339 A.2d 16 (1975), is over-ruled. Accordingly, the relief requested by the plaintiff is granted. However, because there is no pending indictment outstanding, the murder indictment having been nol prossed by the State, the State will have the full thirty days before this order takes effect in order to go before the grand jury should it wish to do so. RSA 490:16.

The growth in the use of the insanity plea and the RSA 651:8 procedure has been dramatic. In 1938–40, the report of the attorney general revealed a dozen homicides, all of which ended in prison sentences. By 1975, however, the attorney general, in a year-end report dated January 6, 1978, revealed that six of fifteen homicide cases went the way of forensic unit commitments.

The State may no longer utilize RSA 651:8 to unilaterally present evidence to a grand jury so as to avoid litigating the issue of criminal liability before a trial jury.

To further clarify the insanity plea's relationship to our criminal law we now outline the procedures to be utilized in future cases.

### I. *Commitment for Observation.*

RSA 135:17 (Supp. 1975) authorizes the superior court to order a pretrial psychiatric examination of a person indicted or bound over awaiting indictment "if a plea of insanity is made in [superior] court, or said court is notified by either party that there is a question as to the sanity of the respondent . . . ." The pretrial examination shall be completed within thirty days after the date of the order. *Id.*

██ Often, however, these pretrial examinations take months to complete, and if a defendant is not released on bail, usually result in confinement to the forensic unit. In the future, motions under RSA 135:17 (Supp. 1975) must be in writing, specifying in detail the behavior observed by counsel that forms the basis for questioning the defendant's sanity or competency to stand trial. Courts may wish to have specific information supplemented by testimony of witnesses in appropriate cases. The court's order must specify whether the examining psychiatrists are to determine defendant's competency to stand trial and to assist counsel in the defense of the case or to determine insanity at the time of the commission of the alleged crime, or to do both. This will aid the psychiatrists in reporting relevant information and may decrease the number of inappropriate or vague referrals. *See generally* Kauf-

man, *Evaluating Competency: Are Constitutional Deprivations Necessary?*, 10 Am. Crim. L. Rev. 465 (1972); Transfer 18, National Clearinghouse for Criminal Justice Planning and Architecture 2–3 (May 1977); Superior Court Rule 103 (January 1, 1977). The superior court may wish to establish rules and procedures implementing these requirements.

## II. *Plea of Not Guilty by Reason of Insanity.*

RSA 651:8-a (Supp. 1975) provides broadly that "[a]ny person prosecuted for an offense may plead that he is not guilty by reason of insanity or mental derangement." If the State disputes insanity at the time of the commission of the crime the matter will be tried solely on the question of insanity, because the plea of not guilty by reason of insanity [hereinafter N. G. I.] is one of confession and avoidance and admits that the defendant committed the acts alleged. *State v. Long*, 90 N.H. 103, 4 A.2d 865 (1939). In that case, this court held that "the commission of the physical act of killing was conceded by defendant's plea of not guilty by reason of insanity. . . . [T]he plea did not put in issue all the allegations of the indictment but was in the nature of a plea of confession and avoidance . . . ." *Id.* at 106, 4 A.2d at 867. If the State *agrees* with an N. G. I. plea, the court then holds a committal hearing pursuant to RSA 651:9, and the defendant is either released or found to be "dangerous" to go at large. To commit him under RSA 651:9 (Supp. 1975) requires proof beyond a reasonable doubt. *State v. Gregoire*, 118 N.H. 140, 384 A.2d 132 (1978), decided this day; *Proctor v. Butler*, 117 N.H. 927, 380 A.2d 673 (1977); *see Gibbs v. Helgemoe*, 116 N.H. 825, 367 A.2d 1041 (1976). The court must inform the defendant, and must find that the defendant understands, that by pleading not guilty by reason of insanity, and having the State agree to it, he will be subject to an RSA 651:9 (Supp. 1975) proceeding, which could result in his involuntary hospitalization "for life until or unless earlier discharged, released, or transferred by due course of law" if he is found to be dangerous to go at large. RSA 651:9, 11-a (Supp. 1975).

## III. *Not Guilty and Bifurcation.*

A defendant may choose to plead not guilty and have a jury trial on the merits of the charge, thus denying that he committed the offense, but may later seek to avoid the responsibility for his act by raising insanity as a defense. RSA 628:2 II and Superior Court Rule 102 (January 1, 1977) require notice of such a defense to be

made within ten days of the entry of a not guilty plea or later only if good cause is shown. Such a defense, if intended to be used, must be accompanied by "a notice of such intention setting forth the grounds therefor." Superior Court Rule 102. To avoid surprise, insanity may not be raised under a not guilty plea without notice to the State. RSA 628:2 II; Superior Court Rule 102.

Previously the statutory plea of insanity constituted a waiver of all other defenses, RSA 607:2 (repealed by Act of November 1, 1973, ch. 370:44, [1973] N.H. Laws 341), while the common law plea of not guilty preserved any other defenses including insanity. *See State v. Forcier*, 95 N.H. 341, 63 A.2d 235 (1949); Comments to 1969 Report following RSA 628:2, pamphlet version, N.H. Criminal Code (1977). This distinction is no longer valid. RSA 628:2 I. The plaintiff seeks a bifurcated hearing by virtue of a not guilty plea that his counsel asserts will be entered if he is reindicted. In *State v. Novosel*, 115 N.H. 302, 339 A.2d 16 (1975), we left the question of bifurcation to the discretion of the trial judge. However, defense counsel then sought, and now seeks, such bifurcation as of right for very important policy reasons.

The two-stage procedure implies that guilt can be fully determined without an inquiry into the insanity of the accused. The bifurcation results "in the complete legal separation of 'guilt' from 'sanity' because the factfinder in the guilt phase is not allowed to hear any evidence of mental disease or defect until guilt has been determined." Comment, *Mens Rea and Insanity*, 28 Me. L. Rev. 500 (1977). To actuate this procedure, an accused couples a plea of not guilty with a defense of insanity.

In a bifurcated trial, the accused will be tried first by a jury that is unaware of the insanity affirmative defense. If the jury returns a verdict of not guilty, the trial terminates, and the second, or "sanity" phase, before the same jury, is never reached. *See, e.g., State v. Hebard*, 50 Wis. 2d 408, 184 N.W.2d 156 (1970); Cal. Penal Code § 1026 (Deering Supp. 1977); Me. Rev. Stat. tit. 17-A, § 59 (Supp. 1977).

To bifurcate assumes that mens rea and insanity can coexist, and therefore, one may be found guilty in phase one and insane in the second phase. Many courts feel that a guilty mind is necessary for culpability and that an insane person is incapable of having mens rea. *See, e.g., United States v. Currens*, 290 F.2d 751 (3rd. Cir. 1961); Davis, *Some Aspects of the* Currens *Decision*, 35 Temp. L.Q. 45 (1961). The *Currens* view concludes that mens rea em-

braces control and choice with the additional element of moral blameworthiness. *See* Comment, *Mens Rea and Insanity, supra* at 508. The latter view was raised and specifically rejected in *State v. Buzynski,* 330 A.2d 422 (Me. 1974). The Maine court found mens rea to be morally neutral and therefore conduct could be compelled by a mental disease or defect and remain intentional:

> A person may well specifically intend to burn a structure, or to commit a robbery, even though he may suffer from a mental disease or defect which causes him to formulate such an intent. Maine law simply holds that he is not criminally responsible for consummating such a crime under the circumstances. *Id.* at 429–30.

Of course, under the Criminal Code here, as in Maine, the State must prove that the defendant acted purposely, knowingly, recklessly or negligently with respect to each material element of the offense. *Compare* RSA 626:2 I *with* Me. Rev. Stat. tit. 17-A § 11.1 (Supp. 1977). Thus if an accused had such a cognitive disability that he actually believed that he was squeezing lemons rather than someone's neck, he could not be culpable under our Code definitions. *See* Wales, *An Analysis of the Proposal to "Abolish" the Insanity Defenses in S.1: Squeezing a Lemon,* 124 U. Pa. L. Rev. 687, 690 (1976). In such a unique case, a bifurcated hearing might not be appropriate.

In the normal course, though, the not guilty plea coupled with an insanity defense should be bifurcated upon request of the defendant. Otherwise, confusion might result. "It is difficult to persuade a jury to acquit with the somewhat convoluted argument that the defendant did not commit the offense, but that if he did do it, it was because he was insane." Shadoan, *Raising the Insanity Defense: The Practical Side,* 10 Am. Crim. L. Rev. 533, 538 (1972).

> [S]ubstantial prejudice may result from the simultaneous trial on the pleas of insanity and "not guilty". . . . [E]vidence that the defendant has a dangerous mental illness invites the jury to resolve doubts concerning commission of the act by finding him not guilty by reason of insanity, instead of acquitting him, so as to assure his confinement in a mental hospital. *Holmes v. United States,* 363 F.2d 281, 282 (D.C. Cir. 1966).

We therefore hold that if a not guilty plea is coupled with an insanity defense, the defendant shall, upon request, receive a

bifurcated hearing before the same judge and jury. Evidence relating to the defendant's mental state is admissible in the guilt determination phase only to show whether the defendant had the requisite intent (*e.g.*, purposely or knowingly) for commission of the crime under RSA 626:2. Evidence tending to show legal sanity or legal insanity, such as expert psychiatric testimony, would not be admissible in the first stage. *People v. Wells,* 33 Cal. 2d 330, 202 P.2d 53 (1949) *cert. denied,* 338 U.S. 836 (1949); *see* Shadoan, 10 Am. Crim. L. Rev. at 538–42.

IV. *Not Guilty Coupled With the Defense of Insanity When Bifurcation Is Not Desired.*

■ A defendant may wish not to bifurcate but nonetheless to plead not guilty and raise the insanity issue under RSA 628:2 II as an affirmative defense. At trial, after the State has rested upon evidence probative of the requisite intent or culpability, RSA 626:2, and other elements of the crime charged, the defendant may go forward with his affirmative insanity defense. *See Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970). The jury should be instructed about the consequences of a finding of not guilty by reason of insanity because, unlike a finding of "not guilty," the consequences of such a finding are not commonly known to the jury. *Lyles v. United States,* 254 F.2d 725 (D.C. Cir. 1957), *cert. denied,* 368 U.S. 992 (1962); *Bean v. State,* 81 Nev. 25, 398 P.2d 251 (1965), *cert. denied,* 384 U.S. 1012 (1966); *Kuk v. State,* 80 Nev. 291, 392 P.2d 630 (1964); *Commonwealth v. Mutina,* 366 Mass. 810, 323 N.E.2d 224 (1975). The jury therefore should be briefly informed of the RSA 651:9 and 651:11-a proceedings. This should also be done in the second phase of bifurcated cases. If the jury certifies to the court that they have acquitted the defendant by reason of insanity, RSA 651:8, the court will then proceed to a determination of *present* dangerousness under RSA 651:9. *See* RSA 135:30-a (Supp. 1975) (*re* conduct of hearings).

V. *Burden of Proof.*

In some jurisdictions in this country, "sanity" signifies a substantive element of the crime charged, requiring proof beyond a reasonable doubt by the State. In other jurisdictions, sanity remains a "policy presumption," requiring that the defendant prove insanity in order to avoid criminal responsibility and punishment.

Note, *The Burden of Proof And The Insanity Defense After* Mullaney v. Wilbur, 28 Me. L. Rev. 435, 452 (1977).

> In all jurisdictions the presumption of sanity . . . places on the defendant the initial burden of production or going forward with evidence on the issue. In the substantive element jurisdictions the state bears the ultimate burden of persuasion, while in the policy presumption jurisdictions the defendant must both raise and persuade on the issue of insanity. *Id.* (footnote omitted).

New Hampshire has been one of the States aligned with the "sanity as an element" theory. In *State v. Bartlett,* 43 N.H. 224 (1861), the court said that "all the elements of crime" must be proved beyond a reasonable doubt, including the mental state of sound memory. This was so, the court said, because "[t]he criminal intent must be proved as much as the overt act, and without a sound mind such intent could not exist; and the burthen [*sic*] of proof must always remain with the prosecutor to prove both the act and criminal intent." *Id.* at 231. As described in *State v. Pike,* 49 N.H. 399 at 442 (1870), "[s]anity is an indispensable ingredient of all crime. If the crime is denied, sanity is denied, and the party alleging it, must prove it."

Last year the United States Supreme Court decided *Patterson v. New York,* 432 U.S. 197 (1977), which affirmed the continuing constitutional validity of *Leland v. Oregon,* 343 U.S. 790 (1952), even though some lower courts expressed doubts about *Leland's* validity after *Mullaney v. Wilbur,* 421 U.S. 684 (1975). *See, e.g., Buzynski v. Oliver,* 538 F.2d 6 (1st. Cir. 1976), *cert. denied,* 429 U.S. 984 (1976). *Leland* upheld Oregon's procedure requiring that the defendant prove his insanity beyond a reasonable doubt. *But see* Ore. Rev. Stat. §§ 161.055, 161.305 (1975). The practice was held not to offend the federal due process clause. In *Patterson* the Court noted that twenty-two States place the burden of proving the affirmative defense of insanity on the defendant while twenty-eight do not. *Id.* at 207 n.10. *Patterson* declined to "adopt as a constitutional imperative . . . that a State must disprove beyond reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Patterson v. New York,* 432 U.S. at 210. This ruling, the Court recognized, permits States, within constitutional limits, to "reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crime" now set forth in their law. *Id.*

■ We now reverse *State v. Bartlett,* 43 N.H. 224 (1861), and accept the Supreme Court's option to consider RSA 628:2 ("Insanity") or a plea under RSA 651:8-a (Supp. 1975) ("Plea of Insanity") as an affirmative defense to be proved by a preponderance of the evidence by the defendant. *See* RSA 626:7 I(b). We find no objection under N.H. Const. pt. 1, art. 15 in placing this burden on the defendant. Sanity should be in the nature of a policy presumption because it is "inherent in human nature" and is the natural and normal condition of mankind. *State v. Lawrence,* 57 Me. 574, 584 (1870). Sanity is not properly an element of the crime. *Id.* This view recognizes the common sense concept that insanity can coexist with criminal intent. *State v. Buzynski,* 330 A.2d 422 (Me. 1974). *See generally* Szasz, *The Sane Slave: Social Control and Legal Psychiatry,* 10 Am. Crim. L. Rev. 337 (1972); Comment, *Mens Rea and Insanity,* 28 Me. L. Rev. 500 (1977).

## VI. *Plea of Guilty.*

■ Obviously nothing in this opinion would prevent a defendant from entering a plea of guilty and getting a finite sentence commensurate with the offense pursuant to RSA ch. 651. RSA 651:10 (Supp. 1975) permits transfers to the New Hampshire Hospital for treatment of insanity. When such an individual has been successfully treated he will, of course, be sent back to the prison to serve the balance of his sentence. The questions of mental illness and need for treatment may be raised at the time of sentencing, though such a plea is not basically a plea of "guilty but mentally ill." Some States have found such a plea to be useful. *See, e.g.,* Mich. Comp. Laws §§ 768.20–21a, 29a–36 (constitutionality upheld in *People v. McLead,* 77 Mich. Ct. App. 327, 258 N.W.2d 214 (1977) and *People v. Desi Steve Jackson,* 80 Mich. App. 244, 263 N.W.2d 44 (1977)); Grischke, Proposal by the Department of Mental Health and Developmental Disabilities concerning Model Legislation on the Insanity Defense (1977).

> *Relief requested is granted if the State elects not to seek an indictment within thirty days from the date of this opinion.*

LAMPRON, J., did not sit; JOHNSON and BEAN, JJ., sat by special assignment pursuant to RSA 490:3; all concurred.