## IN THE MATTER OF NORMAN E. SCULL, AN ATTORNEY AT LAW.

Argued April 24, 1973—Decided May 21, 1973.

*Mr. Frederick C. Vonhof* argued the cause for Essex County Ethics Committee.

*Mr. Matthew P. Boylan* argued the cause for respondent.

PER CURIAM. This is a disciplinary proceeding. On May 15, 1972 an ethics complaint against respondent, Norman E. Scull, was filed with the Essex County Ethics Committee. Respondent, although served with the complaint, failed to answer the charge within time. Accordingly this Court issued its Order to Show Cause returnable June 30, 1972. Respondent filed a wholly inadequate answer on June 29th and when he appeared before this Court on June 30th he was granted leave to file a responsive answer. A hearing on the charge was held before the Committee on September 7, 1972.

On October 18, 1972 the Committee filed its presentment charging respondent with the improper use of funds deposited in his trust account. The funds in question represented the proceeds of a settlement of an automobile accident case. The Committee found that respondent deposited the money in his trust account, but failed to establish a separate controlled bank account containing the infant-plaintiff's share of the funds, as was required by the order of the court approving the settlement. Several months later after repeated demands by the infant-plaintiff's father, and fol-

lowing several requests from the Essex County Surrogate's Office, respondent forwarded to the Surrogate the funds belonging to the infant. The check and covering letter are dated May 11, 1972.

At the September 7, 1972 hearing before the Committee respondent admitted the diversion of these funds for his personal use, conceding that there had been a shortage of funds in his trust account following his receipt of the money. Examination of records produced by respondent as to his trust account prompted the Committee to make a further investigation into and examination of respondent's handling of other trust moneys.

A further hearing was held before the Committee on January 26, 1973 at which time numerous other diversions of trust funds to respondent's personal use were disclosed. These diversions occurred during the period September 1971 through August 1972. However, the Committee had great difficulty in reconciling or balancing the account since respondent did not maintain a ledger book of his trust account and resort had to be made to bank statements, cancelled checks and deposit slips. To determine how much and to whom money was actually owing, all of respondent's office files would have had to be reviewed.

Respondent has admitted these additional diversions of trust funds, as well as his failure to maintain proper records of his trust account in violation of $R.$ 1:21–6(b)(2). His sole explanation is that he had experienced an emotional paralysis brought on by personal and family difficulties, which paralysis persists to this day. He said that since July 16, 1971 he has been undergoing psychotherapy and he has submitted a report from the Rev. Charles C. Perroncel (Pastoral Counselor) indicating a favorable prognosis.

Respondent states that none of his clients has actually lost any money because of his misconduct, and that he now maintains a ledger for his trust account and does not owe any clients money which is overdue. It is submitted that the

punishment to be meted out should take into account respondent's underlying emotional problems.

We cannot view respondent's conduct in a sympathetic light. We do not know from the record whether any of respondent's clients have lost any money as a result of respondent's diversions of trust funds. The Committee found that respondent was less than candid in his testimony as to money owed clients. The trust records respondent produced were so inadequate that it could not be ascertained to whom and how much trust money was owing without reviewing every one of respondent's office files.

The most serious aspect of the diversions exposed at the January 26, 1973 hearing was that several of them occurred after the original ethics complaint had been filed and served. Indeed, on June 30, 1972, the very day that respondent appeared before this Court to answer to the complaint, he admittedly diverted $1,500 from his trust account to his personal use. Some five weeks later on August 10, 1972 he withdrew an additional $2,000. It is unnecessary to itemize the some twenty-one instances of diversion set forth in the Committee's supplemental presentment. Respondent admits, as indeed he must, that they were for his personal purposes and constituted a misuse of trust funds.

This is not symptomatic of any emotional paralysis. Respondent simply was in need of funds for his personal use and took moneys belonging to clients and entrusted to his care. This Court has repeatedly stressed that "funds in the hands of an attorney that belong to a client or others must be kept inviolate." *In re Gavel*, 22 *N. J.* 248, 264 (1956). The brazenness of persisting in this illegal course of conduct even after ethics proceedings had been filed against him points up his indifference to ethical concepts. His misconduct cannot be tolerated. DR 1–102(A)(4)(5)(6). It reflects on the integrity of the bar. The public must be protected against this kind of conduct. Respondent has demonstrated his unfitness to practice law and his name will be stricken from the roll of attorneys.

112

*For disbarment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN and Judges LEWIS and COLLESTER—7.

*Opposed*—None.