Merrimack
No. 7189

STATE OF NEW HAMPSHIRE

v.

VIKTOR NOVOSEL

June 5, 1975

*Warren B. Rudman,* attorney general, and *Robert V. Johnson II,* assistant attorney general, by brief for the State.

*Carroll F. Jones* and *Leonard Merski* by brief for the defendant.

PER CURIAM. The main issues in this second-degree murder case are (1) the constitutionality of RSA 651:8 and :9 which permit the grand jury to omit to indict for the reason of insanity, and in such case allow the court, after finding it to be dangerous for defendant to go at large, to commit him to the prison or the State hospital for life unless sooner released or transferred; and (2) whether, when there is a question of insanity of the defendant, the trial court has discretion to order a bifurcated trial.

Defendant in January 1975 was indicted for second-degree murder alleged to have been committed by means of firing a pistol on December 24, 1974. The State was granted a pretrial psychiatric examination, and in response to the State's motion

defendant's counsel filed notice of intent to rely on the defense of insanity as well as other defenses in accordance with Superior Court Rule 90-C and -D. RSA 628:2. The question of competency to stand trial was also raised by the State, but neither side moved for a hearing on that issue and the trial court decided not to conduct a hearing sua sponte. *See Drope v. Missouri,* 420 U.S. 162 (1975).

Defense counsel informed the trial court that defendant did not want to raise insanity as a defense and therefore had not signed the notice of intent filed by counsel. This notice has now been withdrawn. State's counsel indicated that the State would produce evidence of insanity at the trial and the defense moved for a bifurcated trial which the State opposed.

The State moved that the grand jury be recalled so that it could determine whether, in view of presently available evidence, it would omit to indict by reason of insanity under RSA 651:8. Defense counsel objected and raised the question of the constitutionality of RSA 651:8 and :9.

All questions of law raised by the various motions of the parties were reserved and transferred without ruling by *Keller,* C.J.

The trial court in its discretion has the authority to reconvene the grand jury as the State requests. If the grand jury should omit to find an indictment for the reason of insanity or mental derangement, and so certify to the court under RSA 651:8, committal under RSA 651:9 would require a due process hearing in accordance with RSA 135:30-a (Supp. 1973). Consequently we hold RSA 651:8 and :9 to be constitutional.

We also hold that the trial court can in its discretion order a bifurcated trial reserving the issue of insanity at the time of the alleged offense to be determined at a later trial in the event the jury finds defendant committed the acts charged. Such bifurcation involves the exercise of the discretion which trial judges have always had to determine "the manner and timing of the trial of all or part of the issues in an action . . . ." *Jamestown Mut. Ins. Co. v. Meehan,* 113 N.H. 639, 641, 312 A.2d 689, 691 (1973). No reasons exist for prescribing a different rule in criminal cases than in civil so long as due process is not denied the defendant. *See* Comment, *Due Process and Bifurcated Trials,* 66 Nw. U.L. Rev. 327 (1971); *State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970).

*Remanded.*

Request of the Senate
No. 7237

## OPINION OF THE JUSTICES

June 17, 1975

The following request of the senate for an opinion of the justices was adopted on June 10, 1975, and filed in this court on June 11, 1975:

"Whereas, there is presently pending before the Senate, House Bill 1006, An Act increasing certain sources of revenue for the state; and

"Whereas, an amendment to House Bill 1006 has been proposed in the Senate; and

"Whereas, the question has been raised as to the constitutionality of the Senate's proposing the amendment to House Bill 1006; now, therefore, be it

"Resolved by the Senate:

"That the justices of the Supreme Court be respectfully requested to give their opinion on the following questions:

"1. Are the provisions of the proposed amendment to House Bill 1006 a money bill as specified by Article 18 of Part Second of the Constitution of New Hampshire?

"2. If the answer to question 1 is in the affirmative, does such amending of House Bill 1006 by the Senate constitute originating a money bill by the Senate and therefore violate Article 18 of Part Second of the Constitution of New Hampshire?

"That the clerk of the Senate forward ten copies of these resolutions, ten copies of House Bill 1006 and ten copies of the proposed amendment to House Bill 1006 to the Justices of the Supreme Court."

The following answer was returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court give the following answer to the questions contained in your Resolution No. 16 of June 10, 1975, filed with the court on June 11, 1975.

The amendment proposed by the senate to House bill 1006 would authorize the sweepstakes commission to operate a game of skill in which an eligible purchaser of a weekly sporting event list may attempt to select the winners of the sporting events contained on the list and to win prizes if he does so successfully.

The first question in your resolution is: "Are the provisions of the proposed amendment to House Bill 1006 a money bill as specified by Article 18 of Part Second of the Constitution of New Hampshire?"

Part II, article 18 of the State constitution states that "All money bills shall originate in the house of representatives; but the senate may propose, or concur with, amendments, as on other bills." In *Opinion of the Justices,* 70 N.H. 642, 50 A. 329 (1901), and *Opinion of the Justices,* 102 N.H. 80, 150 A.2d 813 (1959), the senate was advised that "money bills" within the meaning of part II, article 18 are those "imposing a direct tax upon the people" (70 N.H. at 642, 50 A. at 329), those that "raise money by direct taxation" (102 N.H. at 82, 150 A.2d at 815). The justices said in those opinions that such money bills must originate in the house of representatives. 1 J. Sutherland, Statutory Construction § 9.06 (4th ed. C. Sands 1972).

Direct taxation means taxes upon polls and estates. *Opinion of the Justices,* 101 N.H. 518, 521, 131 A.2d 818, 820 (1957). The amendment proposed by the senate is not a tax upon polls and estates. If the amendment is enacted, the moneys to be raised under it would be the effect of a voluntary act by the purchaser, not of an "'enforced contribution to provide for the support of government,' the standard definition of a tax. *United States v. LaFranca,* 282 U.S. 568, 572 (1931)." *United States v. State Tax Comm'n of the State of Mississippi,* 43 U.S.L.W. 4681, 4683 (U.S. June 2, 1975.)

The amendment proposed by the senate would appropriate the net proceeds received from the sale of weekly sporting event lists equally to school districts and toward the health and educational needs of children in the State. A bill appropriating state money is not a money bill within the meaning of part II, article 18, and "may originate in either the House of Representatives or the Senate."

*Opinion of the Justices,* 102 N.H. 80, 82, 150 A.2d 813, 815 (1959); *Opinion of the Justices,* 337 Mass. 800, 809-10, 152 N.E.2d 90, 95-96 (1958); 1 J. Sutherland, Statutory Construction § 9.06 (4th ed. C. Sands 1972).

The views expressed in our earlier opinions and repeated here construing what constitutes a money bill that must originate in the house of representatives and construing appropriations of state money as not constituting money bills represent the general rule in the United States. 1 J. Sutherland *supra;* Annot., 4 A.L.R.2d 973 (1949).

The amendment proposed by the senate not being a money bill within the meaning of part II, article 18 of the State constitution, the answer to your first question is "No".

This answer renders consideration of your second question unnecessary.

> FRANK R. KENISON
> LAURENCE I. DUNCAN
> EDWARD J. LAMPRON
> WILLIAM A. GRIMES
> ROBERT F. GRIFFITH

Request of House of Representatives
No. 7228  ·

OPINION OF THE JUSTICES

June 20, 1975

The following resolution was adopted by the house of representatives on May 28, 1975, and filed with the supreme court on May 29, 1975:

"Whereas, there is presently pending before the House of Representatives 1975 Senate Bill 138, relating to the definition of property within the state under the business profits tax; and

"Whereas, the purpose of 1975 Senate Bill 138 is to relieve from taxation certain suppliers of the state liquor commission who would otherwise be subject to the business profits tax; and

"Whereas, concern has been expressed that limiting this proposed legislation to spirits and wines may be in violation of the 'proportional and reasonable' requirements of Article 5 of Part Second of the Constitution of New Hampshire or may create an impermissible classification of property in violation of Article 6 of Part Second of the Constitution of New Hampshire, now therefore be it

"Resolved by the House of Representatives:

"That, the justices of the Supreme Court be respectfully requested to give their opinion upon the following important questions of law:

"May the general court constitutionally limit the definition of 'business organization' under RSA 77-A:1, I when the consequence of such a limitation is to relieve from taxation otherwise taxable net income derived from a particular type of business activity as specified in 1975 Senate Bill 138? Would any other provision of the New Hampshire Constitution be violated if Senate Bill 138 were enacted into law?

"That, the Clerk of the House transmit ten copies of this resolution and ten copies of Senate Bill 138 to the Clerk of the Supreme Court for consideration by said court."

The following answer was returned:

*To the House of Representatives:*

The question referred to this court is whether the legislature may constitutionally limit the definition of "business organization" under

RSA 77-A:1 I so as to relieve from business profits taxation otherwise taxable net income derived from sales of spirits and wines brought into the State by certain suppliers under the express direction of, or under an agreement with, the State liquor commission for sale to the commission, as proposed in Senate bill 138. RSA 77-A:1 I (Business Profits Tax: Definitions) defines a business organization as "any enterprise, whether corporation, partnership, sole proprietorship, association, business trust, real estate trust or other form of organization, which is organized for gain or profit and which derives economic benefit from the employment of property or labor or both within the state, except such enterprises as are expressly made exempt from income taxation . . . ." under the applicable federal statutes. RSA 77-A:2 (Supp. 1973) imposes a tax at the rate of seven percent upon the taxable business profits of every business organization.

Senate bill No. 138 would narrow the scope of the term "business organization" as used in RSA 77-A:1 I by providing that "[f]or the purpose of this paragraph, the phrase 'property within the state' does not include spirits and wines which are brought into the state for purpose of sale to the State liquor commission under the express direction of or under an agreement with said commission." Limiting the statutory definition of "business organization" in this fashion would relieve from taxation the otherwise taxable net income derived from the sale of spirits and wines to the State liquor commission.

The New Hampshire constitution entrusts the legislature with broad discretion to selectively classify property for the purpose of taxation. *Opinion of the Justices,* 106 N.H. 202, 206, 208 A.2d 458, 461 (1965); *Opinion of the Justices,* 97 N.H. 533, 536, 81 A.2d 845, 848-49 (1951); *Opinion of the Justices,* 95 N.H. 548, 550, 65 A.2d 700, 701 (1949); *Havens v. Attorney-General,* 91 N.H. 115, 118, 14 A.2d 636, 638 (1940); N.H. CONST. pt. II, arts. 5 and 6. "Inequality of taxes laid is forbidden, but inequality caused by taxing some property and not taxing other is permitted." *Opinion of the Justices,* 82 N.H. 561, 574, 138 A. 284, 291 (1927). Legislative classifications of property for purposes of taxation will be sustained so long as "just reasons" for the selections exist. *Opinion of the Justices,* 106 N.H. 202, 206, 208 A.2d 458, 461 (1965); *Opinion of the Justices,* 94 N.H. 506, 508, 52 A.2d 294, 296 (1947); *Opinion of the Court,* 4 N.H. 565, 568 (1829).

While the legislature's discretion to classify property is broad, the constitution prohibits it from classifying taxpayers for purposes of taxation. *Opinion of the Justices,* 106 N.H. 202, 205, 208 A.2d 458, 461

(1965); *Opinion of the Justices,* 97 N.H. 533, 536, 81 A.2d 845, 849 (1951); N.H. CONST. pt. II, art. 6. "Property can be classified for tax purposes. The taxpayers cannot." *Opinion of the Justices,* 84 N.H. 559, 569, 149 A. 321, 326 (1930).

Whether Senate bill No. 138 as presently drafted seeks to classify taxpayers or only property is not clear. "[T]he constitutionality of a statute is to be decided by an examination of its real purpose and its actual effect." *Opinion of the Justices,* 87 N.H. 496, 497, 179 A. 409 (1935). If the effect of the proposal is to exempt certain taxpayers, *i.e.* those who sell "spirits and wines" to the State liquor commission, from this State's general business profits tax, it is unconstitutional. If, however, Senate bill No. 138 merely classifies net income from the sale of "spirits and wines" to the State liquor commission as property exempt from taxation and if a "just reason" can be found for doing so, it is constitutional. *Opinion of the Justices,* 114 N.H. 174, 177-78, 317 A.2d 568, 570 (1974).

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

June 20, 1975
 D. Alan Rock, Senator, District 12, filed memorandum.
 Philip R. Currier, Representative District 15, filed memorandum.
 Hat Enterprises, Inc., of Nashua, New Hampshire, filed memorandum.

Original
No. 7111

*IN RE* PROPOSED RULES RELATING TO GRIEVANCE PROCEDURES

June 25, 1975

PER CURIAM: The committee on professional conduct pursuant to Supreme Court Rule 26 (adopted June 19, 1974, effective June 23, 1974 (113 N.H. 853 (1973)) submitted for approval proposed rules relating to grievance procedures. Written comment from members of the bar was invited by the court and interested members of the bar who desired to be heard orally argued on February 7, 1975. Paul R. Cox, Esq., and Laurence F. Gardner, Esq., of the committee and Robert H. Reno, Esq., submitted written comments and argued orally. Honorable Charles G. Douglas III, Jerome L. Silverstein, Esq., and Frederic T. Greenhalge, Esq., submitted written comments and suggestions. Edward J. Haseltine, a lay member of the committee, commented orally on the rules at the hearing. We have considered comments and suggestions relating to all of the proposed rules, and with the changes noted, the proposed rules replace the present Supreme Court Rule 26 and are attached to this opinion in their corrected form.

## I.

We approve effective July 25, 1975, the proposed rules and the rules of procedure subject to the following changes:

1. Rule 12 is eliminated as it is covered in rule 1 A. The remaining rules 13 through 18 are renumbered to conform to this change.

2. The second sentence of rule 1 B is amended to read: "It is the duty of every recipient of that right to conduct himself at all times in conformity with the standards imposed upon members of the bar as conditions for the right to practice law."

3. Rule 3 C 4, second sentence, shall read: "Upon the approval of such findings and recommendations, the committee can dismiss the complaint, administer private reprimand, or institute and oversee the prosecution of formal disciplinary proceedings in this Court as the case may be." The word "party" in the second sentence of Rule 3 C 5 is changed to "attorney". Rule 3 C 5, next to last sentence, "may" instead of "shall".

4. Rule 7 is amended to add after the first sentence a new sentence to read as follows: "Funds of a client, and funds in which a client has an interest shall be deposited in a trust account and shall in no way be commingled with the funds of an attorney or the funds of the firm of the attorney."

5. The last sentence of rule 7 is amended to read: "The Court may at any time order an audit of such financial records or trust accounts of an attorney and take such other action as it deems necessary to protect the public." The sentence as originally proposed permitted audit of "an attorney's financial records" and was objectionable on self-incrimination grounds under the rule laid down in *Spevack v. Klein,* 385 U.S. 511 (1967). In our opinion the limitation of the audit to records and accounts which an attorney is required by rule of court to maintain for the protection of the public avoids this constitutional objection. *Andresen v. Bar Association,* 269 Md. 313, 305 A.2d 845 (1973), *cert. denied,* 414 U.S. 1065 (1973); *see In re Scull,* 63 N.J. 108, 305 A.2d 70 (1973).

6. Rule 14 E, first sentence, "may" instead of "shall".

7. It was suggested subsequent to the oral arguments that we add to rule 7 a requirement that attorneys annually certify to the clerk of this court their maintenance of trust accounts as required by rule 7. While this suggestion appears to have merit we are not disposed to adopt this addition to rule 7 without an opportunity to the bar to be heard. If the committee desires to submit such an amendment, it may be considered at a later date.

## II.

The comments and suggestions from interested members of the bar have been helpful and have resulted in some of the modifications we have made in the proposed rules. In view of the nature of some suggestions which we have rejected, it appears desirable to offer some explanation of our reasons for not adopting them.

The suggestion that the committee should only act upon written complaint and provide all the due process safeguards of a trial appears to misconstrue the functions of the committee. The rules permit the committee to conduct an investigation upon a complaint or upon its own motion. When the investigation is completed, the committee may dismiss the matter, bring a formal complaint to the court, or issue a private reprimand to the attorney. In the event of a reprimand, the attorney may appeal to the court and obtain a hearing. No publicity is attendant upon the committee investigation, and if the complaint is unjustified, the action of the committee has protected the attorney from unwarranted publicity and damage to the attorney's reputation. In the event of an appeal from a reprimand or in the event of a formal complaint to this court, rule 15 (new rule 14) provides the respondent-attorney with complete due process protection. The proposed rule as adopted (effective June 23, 1974) is in accord with the recommendations contained in the report of the American Bar Association Special Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 71, 92 (Final Draft, June 1970) [hereinafter cited as Clark Report].

We have rejected the suggestion that rule 8, providing for suspension of an attorney convicted of a serious crime as therein defined, should be eliminated. "No single facet of disciplinary enforcement is more to blame for any lack of public confidence in the integrity of the bar than the policy that permits a convicted attorney to practice while apparently enjoying immunity from discipline." Clark Report 124. The integrity of the bar and the protection of the public dictate the summary suspension permitted by this rule during the period of any appeal from conviction of a serious crime.

We have also rejected objections to rule 5 which extends the absolute privilege given to statements in court (W. Prosser, Torts § 114 (4th ed. 1971)) to statements made in disciplinary proceedings providing they are made in good faith. It denies the privilege to statements made other than to the court, committee or attorney general. This is in accord with what we believe to be the better rule.

( *See* Annot., 77 A.L.R.2d 493 (1961); *Ramstead v. Morgan,* 219 Ore. 383, 347 P.2d 594 (1959)) and is recommended by the Clark Report at page 74.

*So ordered.*

### Rules Relating to Grievance Procedures

CONTENTS | Page
--- | ---
1. Discipline Matters in General | 315
  A. Jurisdiction | 315
  B. Grounds for Discipline | 315
  C. Priority of Discipline Matters | 315
2. Definitions | 315
  A. Committee | 315
  B. Bar Counsel | 316
3. Committee on Professional Conduct | 316
  A. Membership | 316
  B. Terms | 316
  C. Powers and Duties | 316
    1. Investigation | 316
    2. Appointment of Bar Counsel | 316
    3. Hearing Panels | 316
    4. Determinations | 316
    5. Reprimand | 317
    6. Committee Rules | 317
    7. Appoint Other Personnel | 317
4. Bar Counsel | 317
  A. Appointment | 317
  B. Powers and Duties | 317
  C. Reinstatement Hearings | 317
  D. Appointment of Other Personnel | 317
5. Immunity | 317
6. Subpoena Power for the Committee | 318
7. Attorney's Financial Records | 318
8. Attorneys Convicted of Serious Crimes | 318
  A. Suspension | 318
  B. Definition of "Serious Crime" | 318
  C. Conclusive Evidence of "Serious Crime" | 318
  D. Institute Disciplinary Proceedings | 319
  E. Reference to Committee | 319
  F. Reinstatement of Attorney | 319

G. Duty to File Certificate of Conviction 319
H. Duty of Committee to File Certificate of
   Conviction 319
I. Attorneys Indicted or Bound Over 319
9. Proceedings Where an Attorney is Declared to be
   Incompetent or is Alleged to be Incapacitated 319
   A. Mentally Incompetent 319
   B. Determination of Incapacity 320
   C. Suspension Due to Incapacity 320
   D. Reinstatement 320
   E. Burden of Proof 321
   F. Waiver of Doctor-Patient Privilege 321
10. Resignation by Attorneys Under Disciplinary Investigation 321
   A. Attorney's Affidavit 321
   B. Disposition of Affidavit 322
   C. Contents of Affidavit 322
11. Reciprocal Discipline 322
12. Disbarred or Suspended Attorneys 322
   A. Notification of Clients 322
   B. Litigated Matters and Notification of Clients 322
   C. Winding Up Affairs 323
   D. Filing Affidavit as to Compliance 323
   E. Retention of Records 323
13. Reinstatement 323
   A. Time to Move for Reinstatement 323
   B. Hearings Before Committee *Re* Reinstatement 323
   C. Role of Bar Counsel 324
   D. Expenses 324
14. Procedure 324
   A. Instituting Disciplinary Proceedings 324
   B. Service 324
   C. Answer 324
   D. Temporary Orders 324
   E. Reference to Judicial Referee or Other Judge 324
   F. Investigation 325
   G. Distribution of Court Order 325
   H. Other Action 325
   I. Conform to Requirements of Superior
      Court Rules 325
15. Appointment of Counsel to Protect Clients' Interests 325
   A. Appointment of Attorneys 325

    B. Nondisclosure                                                     325

    C. Expenses     326

16. Refusal of Complainant to Proceed, Compromise, etc.    326

17. Expenses Relating to Discipline Enforcement    326

### 1. *Discipline Matters in General:*

A. *Jurisdiction:* Any attorney admitted to practice law in this State or any attorney specially admitted to practice by a court of this State is subject to the disciplinary jurisdiction of this Court and the Committee as hereinafter defined. Nothing herein contained shall be construed to deny to any other court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt. Suspension or disbarment of an attorney shall not terminate jurisdiction of this Court.

B. *Grounds For Discipline:* The right to practice law in this State is predicated upon the assumption that the holder is fit to be entrusted with professional matters and to aid in the administration of justice as an attorney and as an officer of the Court. It is the duty of every recipient of that right to conduct himself at all times in conformity with the standards imposed upon members of the bar as conditions for the right to practice law.

       Acts or omissions by an attorney individually or in concert with any person or persons which violate the standards of professional responsibility that have been and any that may be from time to time hereafter approved or adopted by this Court, shall constitute misconduct and shall be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

C. *Priority of Discipline Matters:* Matters relating to discipline of an attorney shall take precedence over all other civil cases in this Court.

### 2. *Definitions:*

A. *Committee:* "Committee" means Committee on Professional Conduct or any successor committee designated to receive and investigate complaints against attorneys.

B. *Bar Counsel:* "Bar Counsel" means the attorney or attorneys responsible for the prosecution of all the disciplinary proceedings before the Court, the Committee or any hearing panel. The Committee shall designate one or more active members of the New

Hampshire Bar Association other than one of their number, to act as Bar Counsel in the investigation and presentation of evidence in the matter under consideration.

### 3. *Committee On Professional Conduct:*

A. The Court shall appoint a Committee to be known as the Committee On Professional Conduct (hereinafter referred to as the "Committee") which shall consist of fifteen members one of whom shall be designated by the Court as the Chairman and another as the Vice Chairman to act in the absence or disability of the Chairman. There shall be one member of the Committee from each county in the State or such other districts as the Court may designate.

B. When the Committee is first selected, five of its members shall be appointed for a term of one year, five for a term of two years and five members for a term of three years and thereafter all regular terms shall be three years. No member shall serve for more than three consecutive terms, but he may be reappointed after a lapse of one year. The Committee shall act only with the concurrence of a majority of its members present and voting, provided, however, that eight members shall constitute a quorum.

C. The Committee shall have the power and duty:

1. To consider and investigate the conduct of any attorney within the jurisdiction of this Court and may initiate any such investigation on its own motion or may undertake the same upon complaint by any person.

2. To appoint a Bar Counsel and such assistant Bar Counsel as may from time to time be required to properly perform the functions hereinafter prescribed.

3. To appoint as may be necessary and in the discretion of the Committee, hearing panels consisting of three members and to assign to such hearing panels complaints concerning charges of misconduct.

4. To make a determination either on its own findings or after review of findings by a hearing panel as to whether or not such conduct warrants dismissal, private reprimand or formal disciplinary proceedings in this Court. Upon the approval of such findings and recommendations, the committee can dismiss the complaint, administer private reprimand, or institute and oversee the prosecution of formal disciplinary proceedings in this Court as the case may be.

5. To reprimand attorneys subject to the jurisdiction of

this Court for misconduct by issuing a letter of discipline. Any attorney aggrieved by a letter of discipline issued by the Committee shall have the right to appeal such discipline to the Court. Such right must be exercised within thirty days from receipt of the letter of discipline. The manner of appeal shall be determined by the Court. The Court may refer the appeal to a judge or referee in the same manner as provided in Rule 14. Such discipline may be affirmed, modified or reversed.

6. To adopt rules of procedure not inconsistent with the rules promulgated by this Court.

7. To appoint such investigative and other personnel as the Committee shall deem necessary.

4. *Bar Counsel:*

A. The Committee shall appoint a Bar Counsel and such Assistant Bar Counsel as may be required.

B. Counsel shall have the power and duty to prosecute all disciplinary proceedings before hearing panels, the Committee and this Court as the case may be.

C. Counsel shall appear at hearings conducted with respect to motions for reinstatement by suspended or disbarred attorneys, cross-examine witnesses testifying in support of the motion and marshall available evidence, if any, in opposition thereto.

D. Within the budgetary authorization approved by the Committee, Counsel shall appoint such investigative and other personnel as Bar Counsel shall deem necessary.

5. *Immunity:* Each person shall be immune from civil liability for all of his statements made in good faith to the Committee, the office of the Attorney General or to this Court or given in any investigation or proceedings pertaining to alleged misconduct of an attorney. The protection of this immunity does not exist as to statements made to others. The Committee, its staff, counsel, investigators and any members of the Hearing Panels, shall be immune from civil liability for any conduct arising out of the performance of their duties.

6. *Subpoena Power For The Committee:* At any stage of an investigation witnesses may be summoned by subpoena issued by the Court upon request of the Committee or a respondent attorney. Witnesses before the Committee shall be examined under oath or affirmation.

7. *Attorney's Financial Records:* Every attorney shall maintain complete records of the handling, maintenance and disposition of all funds, securities and other properties of a client at any time in his possession from the time of receipt to the time of final distribution and shall preserve such records for a period of six years after final distribution of such funds, securities or other properties or any portion thereof. Funds of a client and funds in which a client has an interest shall be deposited in a trust account and shall in no way be commingled with the funds of an attorney or the funds of the firm of the attorney. The Court may at any time order an audit of such financial records or trust accounts of an attorney and take such other action as it deems necessary to protect the public.

8. *Attorneys Convicted Of Serious Crimes:*

A. Upon the filing with the Court of a certified copy of any Court record establishing that an attorney has been convicted of a serious crime as hereinafter defined, the Court may enter an order suspending the attorney, whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such conviction.

B. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

C. A certified copy of any Court record establishing the conviction of an attorney for any "serious crime" shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against him based upon the conviction.

D. Upon the receipt of a certificate of conviction of an attorney for a "serious crime", the Court may, and shall if suspension has been ordered pursuant to sub-paragraph A above, institute a formal disciplinary proceeding and refer the matter to a referee, in which the sole issue to be determined shall be the extent of the final discipline to be imposed provided that a disciplinary proceeding so instituted will not be brought to hearing until all appeals from the conviction are concluded.

E.  Upon receipt of a certificate of a conviction of an attorney for a crime not constituting a "serious crime", the Court shall refer the matter to the Committee for whatever action it may deem warranted including the institution of an investigation, provided, however, that the Court may in its discretion make no reference with respect to convictions for minor offenses.

F.  An attorney suspended under the provisions of "A" above may be reinstated upon the filing of a certificate demonstrating that the underlying conviction for a serious crime has been reversed but the reinstatement will not terminate any proceeding then pending against the attorney.

G.  The clerk of any court within the State in which an attorney is convicted of any crime shall, within ten days of said conviction, transmit a certificate thereof to this Court.

H.  Upon being advised that an attorney has been convicted of a crime within this State, the Committee shall determine whether the clerk of the Court where the conviction occurred has forwarded a certificate to this Court in accordance with the provisions of "G" above. If the certificate has not been forwarded by the clerk or if the conviction occurred in another jurisdiction, it shall be the responsibility of the Committee to obtain a certificate of conviction and to transmit it to this Court.

I.  Whenever an attorney is indicted or bound over for any felony the Court shall take such actions as it deems necessary, including but not limited to the suspension of the attorney.

## III

9. *Proceedings Where An Attorney Is Declared To Be Incompetent Or Is Alleged To Be Incapacitated:*

A.  Whenever an attorney has been judicially declared incompetent or voluntarily or involuntarily committed to a mental institution, the Court, upon proper proof of the fact, may enter an order suspending such attorney from the practice of law until the further order of the Court. A copy of such order shall be served upon such attorney, his guardian and such other persons and in such manner as the Court may direct.

B.  Whenever the Committee shall petition the Court to determine whether an attorney is incapacitated from continuing the practice of law by reason of mental or physical infirmity or illness or because of addiction to drugs or intoxicants, the Court may take or

direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including the examination of the attorney by such qualified medical experts as the Court shall designate. If, upon due consideration of the matter, the Court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending him on the ground of such disability for an indefinite period and until the further order of the Court and any pending disciplinary proceeding against the attorney may be held in abeyance.

The Court shall provide for such notice to the respondent-attorney of proceedings in the matter as it deems proper and advisable and shall appoint an attorney to represent the respondent if he is without adequate representation.

C. If, during the course of a disciplinary proceeding, the respondent-attorney contends that he is suffering from a disability by reason of mental or physical infirmity or illness, or because of addiction to drugs or intoxicants, which makes it impossible for the respondent-attorney to adequately defend himself, the Court thereupon shall enter an order immediately suspending the respondent-attorney from continuing to practice law until a determination is made of the respondent-attorney's capacity to continue to practice law in a proceeding instituted in accordance with the provisions of paragraph "B" of this Rule.

If, in the course of a proceeding under this Rule or in a disciplinary proceeding, the Court shall determine that the respondent-attorney is not so incapacitated, it shall take such action as it deems proper and advisable including a direction for the resumption of the disciplinary proceeding against the respondent-attorney.

D. Any attorney suspended under the provisions of this Rule may apply for reinstatement following the expiration of one year from the date of suspension or at such other time as the Court may direct in the order of suspension or any modification thereof. Such application shall be granted by the Court upon a showing by clear and convincing evidence that the attorney's disability has been removed and he is fit to resume the practice of law. Upon such application, the Court may take or direct such action as it deems necessary or proper to a determination of whether the attorney's disability has been removed including a direction for an examination of the attorney by such qualified medical experts as the Court shall designate. In its discretion, the Court may direct that the expense of such an examination shall be paid by the attorney.

Whenever an attorney has been suspended by an order in accordance with the provisions of paragraph "A" of this Rule and, thereafter, in proceedings duly taken, he has been judicially declared to be competent, the Court may dispense with further evidence that his disability has been removed and may direct his reinstatement upon such terms as it deems proper and advisable.

E. In a proceeding seeking an order of suspension under this Rule, the burden of proof shall rest with the Committee. In a proceeding seeking an order terminating a suspension under this Rule, the burden of proof shall rest with the suspended attorney.

F. The filing of an application for reinstatement by an attorney suspended for disability shall be deemed to constitute a waiver of any doctor-patient privilege with respect to any treatment of the attorney during the period of his disability. The attorney shall be required to disclose the name of every psychiatrist, psychologist, physician and hospital by whom or in which the attorney has been examined or treated since his suspension and he shall furnish to the Court written consent to each to divulge such information and records as requested by the Committee or the Court-appointed medical experts.

10. *Resignations By Attorneys Under Disciplinary Investigation:*

A. An attorney who is the subject of an investigation into the allegations of misconduct on his part may submit his resignation by delivering to the Committee an affidavit stating that he desires to resign and that:

(I) his resignation is freely and voluntarily rendered; he is not being subjected to coercion or duress; he is fully aware of the implications of submitting his resignation;

(II) he is aware that there is presently pending an investigation into allegations that he has been guilty of misconduct the nature of which he shall specifically set forth;

(III) he acknowledges that the material facts upon which the complaint is predicated are true; and

(IV) he submits his resignation because he knows that if charges were predicated upon the misconduct under investigation he could not successfully defend himself against them.

B. Upon receipt of the required affidavit, the Committee shall file it with the Court and the Court may take such action as it deems necessary.

C. The contents of an affidavit of an attorney filed in support

of his resignation from the Bar shall not be disclosed publicly or made available for use in any other proceeding except on order of the Court.

11. *Reciprocal Discipline:* Upon receipt of a certificate that an attorney admitted to practice in this State has been disciplined in another jurisdiction, the Court may enter an order imposing the identical discipline or in its discretion, suspending the attorney pending the imposition of final discipline. A final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall be considered prima facie evidence of the misconduct for purposes of a disciplinary proceeding in this State.

12. *Disbarred Or Suspended Attorneys:*

A. A disbarred or suspended attorney may be ordered by the Court to notify by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court or agency, of his disbarment or suspension and his consequent inability to act as an attorney after the effective date of his disbarment or suspension and shall advise said clients to seek other legal counsel.

B. A disbarred or suspended attorney may be ordered by the Court to notify, by registered or certified mail, return receipt requested, each of his clients who is involved in litigated matters or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of his disbarment or suspension and consequent inability to act as an attorney after the effective date of his disbarment or suspension. The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in his place.

In the event the client does not obtain substitute counsel before the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended attorney to move pro se in the court or agency in which the proceeding is pending, for leave to withdraw.

The notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of the client of the disbarred or suspended attorney.

C. The disbarred or suspended attorney, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any

nature. However, during the period from the entry date of the order and its effective date, he may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

D. In addition, the Court may order that within thirty days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with the Court an affidavit showing: (1) that he has fully complied with the provision of the order and with this Rule; and (2) that he has served a copy of such affidavit upon the Committee. Such affidavit shall also set forth the residence or other address of the disbarred or suspended attorney where communications may thereafter be directed to him.

E. A disbarred or suspended attorney shall keep and maintain records of the various steps taken by him under this Rule so that, upon any subsequent proceeding instituted by or against him, proof of compliance with these Rules and with the disbarment or suspension order will be available.

13. *Reinstatement:*

A. An attorney who has been suspended for a specific period may not move for reinstatement until the expiration of the period specified in the order of suspension.

B. Motions for reinstatement by attorneys suspended for misconduct rather than disability shall be served upon the Committee at least two months prior to the return date thereof. Upon receipt of the motion for reinstatement, the Committee shall refer the motion to a hearing panel appointed by the Committee. The hearing panel shall promptly schedule a hearing at which the respondent-attorney shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for admission to practice law in this State and that his resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest. At the conclusion of the hearing, the hearing panel shall promptly file a report containing its findings and recommendations and transmit same, together with the record, to the Committee. The Committee shall review the report of the hearing panel and the record and shall file its own recommendations and findings with the Court, together with the record, on or before the return date of the motion for reinstatement. Following the submission of briefs and oral argument, if any, the Court shall enter a final order.

C. In all proceedings upon a motion for reinstatement, cross-examination of the respondent-attorney's proof and the submission of evidence, if any, in opposition to the motion for reinstatement shall be conducted by Bar Counsel.

D. The Court in its discretion may direct that the necessary expenses incurred in the investigation and processing of a motion for reinstatement be paid by the respondent-attorney.

## 14. *Procedure:*

A. Discipline proceedings shall be initiated in this Court by the Committee or by the Attorney General by written complaint setting forth allegations of facts giving rise to the complaint and alleging the specific provisions of the Code of Professional Responsibility as adopted by the New Hampshire Bar Association which have been violated.

B. Service shall be made on the respondent-attorney in such manner as the Court may direct.

C. Respondent-attorney shall answer each allegation specifically and shall file his answer within thirty days after service of the complaint upon him.

D. The Court may make such temporary orders as justice may require either with or without hearing. Respondent-attorney shall be entitled to be heard after any *ex parte* order.

E. The Court may refer the complaint for hearing before a judicial referee or other judge. After hearing, the referee/judge shall file his written report with the Court with specific findings of fact and rulings of law. The Court shall, after filing of briefs and oral arguments, make such Order as justice may require.

F. In the event that the Court decides to impose discipline, Bar Counsel shall cause an investigation to be made as to the respondent-attorney and to file such report with the Court. At the time discipline is imposed the Court may consider the report of Bar Counsel and his recommendation in imposing such discipline and respondent-attorney may be heard on his own behalf. No oral evidence as to character and reputation shall be heard except by leave of the Court.

The Court may suspend, disbar or publicly censure respondent-attorney upon such terms and conditions as the Court deems necessary for the protection of the public and the preservation of the integrity of the legal profession.

G. In the event of suspension or disbarment, a copy of the

Court's order shall be sent to the clerk of every court in the State and to each State in which the respondent-attorney is admitted to practice. The Committee shall continue to be responsible to insure respondent-attorney's compliance with the Court order of suspension or disbarment and to notify the Court as to any violations for such action as the Court deems necessary.

H. In addition to the procedure described herein, the Court may take such action on its own motion as it deems necessary.

I. Pleadings and procedure before the Court and before the referee/judge shall conform insofar as practicable with the requirements of the Superior Court Rules for trials of matters of equity.

15. *Appointment Of Counsel To Protect Clients' Interests:*

A. Whenever an attorney is suspended, disbarred, dies or his whereabouts are unknown, and no partner, executor or other responsible party capable of conducting the attorney's affairs is known to exist, the Court, upon proper proof of the fact, may appoint an attorney or attorneys to make an inventory of the files of said attorney and to take such action as seems indicated to protect the interests of clients of said attorney as well as the interest of said attorney.

B. Any attorney so appointed shall not be permitted to disclose any information contained in any files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order appointing the attorney to make such inventory.

C. Any attorney so appointed shall be entitled to reasonable compensation and reimbursement for expenses incurred.

16. *Refusal Of Complainant To Proceed, Compromise, Etc.* Neither unwillingness nor neglect of the Complainant to sign a complaint or to prosecute a charge nor settlement, compromise or restitution shall in itself justify abatement of an investigation into the conduct of an attorney.

17. *Expenses Relating To Discipline Enforcement:* All expenses incurred by the Committee and by Bar Counsel in the investigation and enforcement of discipline shall be paid by the New Hampshire Bar Association.

326

OPINION OF THE JUSTICES

June 26, 1975

The following resolution was adopted by the senate on May 29, 1975, and filed with the supreme court on June 11, 1975:

"Whereas, there is presently pending before the Senate 1975 House Bill 868, prohibiting oil producers and refiners from operating retail gasoline stations and requiring oil suppliers to treat gasoline dealers uniformly; and

"Whereas, the question has been raised as to the constitutionality of certain portions of said bill and as to the constitutionality of a proposed amendment to said bill; now, therefore, be it Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions:

"1. Do the provisions of House Bill 868 as passed by the house violate any of the provisions of the United States or New Hampshire Constitutions?

"2. Do the provisions of the proposed amendment to House Bill 868 violate any of the provisions of the United States or New Hampshire Constitutions?

"That the clerk of the Senate forward ten copies of these resolutions, ten copies of House Bill 868 and ten copies of the proposed amendment to House Bill 868 to the Justices of the Supreme Court."

The following answer was returned:

*To the Honorable Senate:*

The two questions submitted are: (1) whether House Bill No. 868

which proposes to prohibit producers and refiners of petroleum products from operating retail gasoline stations in the State and requires suppliers of petroleum products to uniformly treat dealers buying from them would violate either the Federal or New Hampshire Constitution; (2) whether the proposed senate amendment to No. 868, permitting producers and refiners which do not lease or franchise any retail gasoline stations to operate such stations, violates either the Federal or the State Constitution.

As passed by the State house of representatives, House Bill No. 868 proposes two additional sections to the nine already in RSA ch. 339-C (Regulation of Gasoline Franchises); *see* Laws 1974, 24:1. The house's version of RSA 339-C:10 (Producers and Refiners Prohibited from Operating Retail Outlets) provides that "[a]fter January 1, 1977, a producer or refiner of petroleum products may not operate, directly or indirectly, a retail outlet in this state which sells gasoline to the motoring public." The amendment proposed by the senate adds the following proviso to the house's version: "provided, however, that such a producer or refiner may so operate such retail outlets if such producer or refiner does not, directly or indirectly, lease to others or franchise to others any retail gasoline outlets in this state."

On June 11, 1975, this court provided notice that typewritten memoranda on the questions presented by your request might be furnished by any attorney, legislator, organization, interested party or member of the public before Wednesday, June 18, 1975. While several memoranda opposing the proposal on constitutional grounds were submitted by major oil companies *(See Exxon Corporation v. Conner,* No. 74-1449 [Cir. Ct. of Fla., 2d Cir., Jan. 23, 1975]), no memoranda were received in favor of the proposed legislation.

The constitutional duty of this court is to render advisory opinions on pending legislation. N.H. CONST. pt. II, art. 74; *see Opinion of the Justices,* 98 N.H. 537, 104 A.2d 208 (1954); *Opinion of the Justices,* 93 N.H. 474, 475, 37 A.2d 478, 479 (1944). Since the legislature will not have an opportunity to consider House Bill No. 868 prior to its imminent adjournment and since a balanced presentation of opposing views on the important constitutional issues raised by the proposals has not been presented to this court, we respectfully request to be excused from rendering an advisory opinion. Note, 72 Harv. L. Rev. 723, 732 (1959); Comment, 69 Harv. L. Rev. 1302, 1308-09 (1956); Field, *The Advisory Opinion – An Analysis,* 24 Ind. L.J. 203, 214 (1949). "It must be remembered that advisory opinions are not

merely advisory opinions. They are ghosts that slay." F. Frankfurter, *A Note On Advisory Opinions,* 37 Harv. L. Rev. 1002, 1008 (1924).

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

June 26, 1975.

William C. Whittemore, staff attorney for Mobil Oil Corporation, filed memorandum of law.

Stacey W. Cole, executive director of New Hampshire Petroleum Council, filed memorandum.

Robert T. Haslam, senior public relations representatives for Exxon Company, U.S.A., filed memorandum.

J. William Dalgetty, regional attorney for Mobil Oil Corporation, filed memorandum.